**Howard NEAL, Petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

**No. C5–01–848.**

Supreme Court of Minnesota.

Feb. 20, 2003.

Rehearing Denied April 3, 2003.

Mark D. Nyvold, St. Paul, MN, for Appellant.

Mike Hatch, State Attorney General, Susan Gaertner, Ramsey County Attorney, Jeanne L. Schleh, Assistant Ramsey County Attorney, St. Paul, MN, for Respondent.

## OPINION

PAUL H. ANDERSON, Justice.

A Ramsey County jury convicted appellant, Howard Neal, of one count of kid-

napping and two counts of first-degree aggravated robbery, and the district court sentenced Neal to 576 months in prison. Using the dangerous-offender statute, Minn.Stat. § 609.1095, subd. 2 (2002), the court sentenced Neal to 480 months for the kidnapping, which is the statutory maximum and more than four times the presumptive sentence. The court also used the dangerous-offender statute to impose a 96–month, double durational departure, consecutive sentence for one count of aggravated robbery. Finally, the court sentenced Neal to 108 concurrent months for the second count of aggravated robbery. Neal petitioned for postconviction relief on numerous grounds, including the length of his sentence. The postconviction court denied the petition for relief. The Minnesota Court of Appeals affirmed, and we granted review solely on the issue of the 576–month sentence. We affirm in part, reverse in part, and remand.

In the summer of 1998, Cannick Thao, who was 15 years old, traveled to Saint Paul from California to spend time with her sister, Ying Thao Vang, and brother-in-law, Cher Vang. Thao spent the summer babysitting her nieces and nephews and occasionally assisted the Vangs at their Saint Paul delicatessen.

On July 13, Thao, her sister, and brother-in-law were working together at the delicatessen. Sometime between 1:30 and 2:00 p.m., appellant, Howard Neal, entered the store and ordered french fries from Ying Vang. Unable to pay for the fries, Neal promised her he would come in the next day to pay for them. Neal then gave Ying Vang a false name and address.

The next day, Thao and Ying Vang were working alone at the store. Around 1:25 p.m., Ying Vang left to make deliveries. Shortly after Ying Vang left, Neal entered the store. Thao proceeded to serve a customer who entered about the same time as Neal. After receiving her order, the customer left, leaving Thao alone with Neal. Neal again ordered french fries and stated that he was returning to pay for his french fries from the previous day. He then paid for the french fries and asked for a soda. After receiving his change, Neal jumped through the window above the counter, grabbed Thao, pressed a gun to her neck, and asked, "where is the money?" Thao gave Neal all the money from the cash register.

While still holding the gun to her neck, Neal forced Thao to walk to the front of the store to search for more money. When Thao could not locate money in a desk, Neal told her to get down on her knees. Neal then pointed the gun at Thao, "racked back" the gun, and told her that he was going to kill her.

Neal next ordered Thao to walk to the back of the store in an effort to find out what was behind a door. Neal discovered that the door led to a bathroom and ordered Thao to enter the bathroom, turn around, and put her hands behind her back. Neal then tied Thao's hands with a plastic tie and ordered her to kneel on the floor. Neal left Thao in this position for about two minutes and then returned, demanding to know when her brother-in-law and sister were coming back to the store. Thao told him they would be returning in a few minutes. Neal left and returned shortly, asking again when Thao's brother-in-law and sister would be returning, and where the money was. Neal then slapped Thao on the left side of her face and covered her entire face and head with masking tape, leaving only a small hole near the mouth, and again left her in the bathroom.

While Neal was robbing the store, Cher Vang arrived at the store and parked his vehicle in the back. He walked down the steps leading to the back door and noticed

that the door was unlocked. Vang knocked, and hearing no response, opened the door. As he opened the door, Neal punched him in the face. Neal then grabbed Vang's shirt and repeatedly beat Vang on the head and face with his fists and the butt of the gun. Neal then forced Vang into the stairway. When Vang attempted to fight back, Neal threatened to kill him if he continued to struggle. During the beating, Neal forced Vang to the ground and attempted to choke him with a wire. Neal also took $500 and a driver's license from Vang's pants pocket. Neal then left the store and after unsuccessfully attempting to steal Vang's vehicle, he ran away.

After Neal left, Vang ran to the neighbors for help and then returned to the store. He found Thao tied up in the bathroom and helped to free her. A Saint Paul police officer, who came to the scene, described Thao's condition after the robbery as stunned or shocked. The officer confirmed that Thao suffered significant red bruising and scraping to her neck. In addition, Thao's wrists were visibly reddened from the plastic tie. As a result of his beating, Vang suffered numerous serious injuries, including a broken nose and multiple abrasions throughout his torso and upper and lower extremities.

After a five-month investigation, the police arrested Neal in December 1998. The state charged Neal with the following offenses: (1) aggravated robbery in the first degree of Vang in violation of Minn.Stat. § 609.245, subd. 1 (2002); (2) kidnapping of Thao in violation of Minn.Stat. § 609.25, subds. 1(3) and 2(2) (2002); and (3) at-

tempted aggravated robbery in the first degree of Thao in violation of Minn.Stat. §§ 609.17, subd. 1 (2002), and 609.245, subd. 1. On the first day of Neal's jury trial, the state amended the complaint, changing attempted aggravated robbery in the first degree to aggravated robbery in the first degree. The jury found Neal guilty on all three charges.

Neal's presentence investigation revealed that between 1980 and 1996 he accumulated convictions for nine felony offenses, including burglary, three counts of armed robbery, unauthorized use of a weapon, attempted murder, simple robbery, tampering with a witness, and possession of a pistol by a felon. In light of Neal's extensive criminal history, the state filed a motion requesting upward durational departures for the kidnapping of Thao and the aggravated robbery of Vang. It did so under the dangerous-offender statute, which allows the district court to impose upward durational departures when the offender is a danger to public safety. Minn.Stat. § 609.1095, subd. 2. The state further moved the court to order that the sentence for the aggravated robbery of Vang be consecutive to the sentences for the aggravated armed robbery and the kidnapping of Thao.

■ Neal was sentenced to a total of 576 months in prison. When sentencing Neal, the district court first addressed the kidnapping charge and sentenced him to 480 months, the statutory maximum for kidnapping. Minn.Stat. § 609.25, subd. 2(2). The court based the departure on the dangerous-offender statute. Minn. Stat. § 609.1095, subd. 2.[1] The sentence

---

**1.** This statute went into effect August 1, 1998, before Neal was sentenced, but after the date of his offense. The previous dangerous-offender statute, Minn.Stat. § 609.152, subd. 2, was repealed August 1, 1998. *See* Act effective August 1, 1998, ch. 367, art. 6, § 7, 1998

Minn. Laws 731, 735. The district court erred in using the 1998 dangerous-offender statute because it went into effect after the date of Neal's offense, July 14, 1998. *See State v. Murray*, 495 N.W.2d 412, 413 (Minn. 1993) (holding that the defendant could not

constituted more than a quadruple durational departure from the presumptive sentence of 108 months.[2] The court found that Neal had previously been convicted of two or more violent crimes and was over 18 when he committed the present offense, and thus satisfied subdivision 2's requirements. The court also found that Neal's past criminal activity illustrated both a "high frequency rate" and a "long involvement within the criminal realm of society." Further, the court found Neal's treatment of Thao and his lack of remorse to be aggravating factors. Next, the court sentenced Neal to 108 concurrent months—the presumptive sentence under the Minnesota Sentencing Guidelines—for the aggravated robbery of Thao.

Turning to the first-degree aggravated robbery of Vang, the district court sentenced Neal to 216 months, a double departure from the 108–month presumptive sentence. The court also based this departure on the dangerous-offender statute. In addition, the court ordered that the 216–month sentence be consecutive to the kidnapping sentence. The court made the following findings: (1) aggravated robbery is a violent crime and a felony; (2) Neal was 35 when he committed the offense; and (3) Neal had previously been convicted of the following violent crimes: attempted murder, three armed robberies, simple robbery, tampering with a witness, and first-degree possession of a pistol. The court also found that "[Neal's] past criminal behavior, including the frequency rate of criminal activity and long involvement in criminal activity," satisfied the provisions of the dangerous-offender statute. Finally, the court noted that aggravating factors were present because Neal inflicted substantial bodily harm upon Vang.

Four days later, a second sentencing hearing was held to correct a mistake made in calculating the presumptive sentence for the aggravated robbery of Vang.[3] The district court recalculated the presumptive sentence to 48 months. The court sentenced Neal to a double durational departure of 96 months under the dangerous-offender statute, and made findings on the record similar to those made at the first sentencing. The final result was that Neal was sentenced to a total of 576 months.

Neal filed a direct appeal with the court of appeals, but he withdrew his appeal to file instead for postconviction relief. In his petition for postconviction relief, Neal raised numerous issues including the validity of his 576–month sentence. The postconviction court denied relief on all grounds and subsequently issued supplemental findings of fact.

be sentenced under the patterned sex offender statute if his offense occurred before the statute became effective). However, the criteria for sentencing a defendant are identical under both dangerous-offender statutes, so the court's error is harmless.

2. At trial, the district court used a presumptive sentence of 158 months. But this presumptive sentence was miscalculated. Kidnapping, under Minn.Stat. § 609.251, subds. 1(3) and 2(2), is ranked by the Sentencing Guidelines as a level VII offense. Minnesota Sentencing Guidelines V. The sentencing worksheet incorrectly ranked Thao's kidnapping as a level VIII offense. Thus, the presumptive sentence should have been 108 months, not 158. The court actually departed more than four times from the presumptive sentence when it imposed the statutory maximum. On appeal, both parties agree that the presumptive sentence was miscalculated.

3. The court imposed a permissive consecutive sentence. The sentencing guidelines mandate that a criminal history score of zero shall be used in calculating the presumptive sentence. Minnesota Sentencing Guidelines II.F. Using a criminal history score of zero, the correct presumptive sentence is 48 months.

In its supplemental findings of fact, the postconviction court specifically found that "[Neal] is a danger to public safety within the meaning of Minn.Stat. § 609.1095, subd. 2(2) because he satisfies both alternative prongs of that definition either one of which is sufficient to support the finding." The court also adopted by reference the aggravating factors briefed and argued by the state. Addressing the kidnapping offense, the court found the following to be aggravating factors: "particular cruelty, gratuitous infliction of injury and victim vulnerability." Regarding the aggravated robbery of Vang, the court found that the following were aggravating factors: "gratuitous violence and infliction of substantial bodily harm."

Neal appealed the postconviction court's findings and the court of appeals affirmed on all grounds. Citing Neal's failure to provide authority and analysis for his position, the court of appeals summarily dismissed the sentencing issue. Neal filed a petition for review, raising numerous issues including the 576–month sentence. We granted review solely on the sentencing issue. Neal contends that his sentence should be modified because: (1) the district court did not find that he is a danger to public safety as required by the dangerous-offender statute; (2) the court did not comply with the requirements of the statute when it did not find severe aggravating factors before imposing greater than a double durational departure; (3) the 480–month sentence for the kidnapping is excessive and unreasonable; and (4) a 576–month sentence is unreasonable and unfairly exaggerates his criminality.

## I.

■ Neal asserts that because the district court did not specifically state on the record that he is a danger to public safety, he was improperly sentenced under the dangerous-offender statute. He also contends that the postconviction court's supplemental findings of fact cannot be used to justify the sentence because the district court was required to make such findings when it first sentenced him. A determination of this issue requires an interpretation of the dangerous-offender statute. We review de novo the issue of whether a statute has been properly construed. *State v. Murphy,* 545 N.W.2d 909, 914 (Minn.1996).

■ The dangerous-offender statute authorizes a district court to impose an upward durational departure from the presumptive sentence up to the statutory maximum if the offender is at least 18 years old and the court determines that the offender (1) committed a violent crime that is a felony; (2) has two or more prior convictions for violent crimes; and (3) is a danger to public safety. Minn.Stat. § 609.1095, subd. 2. The court must specify "on the record" a basis for finding the offender is a danger to public safety. *Id.* The statute articulates two theories the court may use as a basis for finding that the offender is a danger to public safety:

(i) the offender's past criminal behavior, such as the offender's high frequency rate of criminal activity or juvenile adjudications, or long involvement in criminal activity including juvenile adjudications; or

(ii) the fact that the present offense of conviction involved an aggravating factor that would justify a durational departure under the sentencing guidelines.

*Id.*

■ Here, the district court failed to specifically state on the record that Neal constitutes a danger to public safety. However, as the state points out, the court found that Neal satisfied the criteria of the dangerous-offender statute. Addressing the kidnapping offense, the court found: (1) Neal was over 18 when he committed

the present offense; (2) he had two or more prior convictions for violent crimes; (3) that the present offense is a felony; and (4) that Neal's criminal activity was both frequent and for a long duration. In regard to the aggravated robbery sentence, the court found: (1) aggravated robbery is a violent crime; (2) Neal was 35 when he committed the offense; (3) he was convicted of seven prior violent crimes; and (4) Neal's past criminal activity had both a long history and a high frequency.

While the district court did not articulate a specific finding that Neal is a danger to the public, the court's other findings provide the basis for such a conclusion. When the court addressed the kidnapping offense and the aggravated robbery offense, it specifically found that Neal had both a long involvement in criminal activity and a high frequency rate of criminal activity. Thus, after reviewing the court's findings in their entirety, we conclude that the court's failure to specifically find that Neal is a danger to public safety does not invalidate the sentence. Accordingly, there is no need to consider whether the district court properly used supplemental findings of fact to justify the sentences imposed under the dangerous-offender statute.

■ While we conclude here that the district court did not err because it essentially complied with the requirements of the dangerous-offender statute, the court should have followed the statute. The purpose behind the sentencing guidelines is to establish uniform and consistent sentencing standards. Minnesota Sentencing Guidelines I. The dangerous-offender statute counteracts this purpose by allowing courts to impose sentences that depart durationally from the presumptive sentence. To justify the departure, the court must find the offender satisfies specific criteria defined by the statute. Therefore,

courts should comply with the mandates of the statute to ensure that a departure is warranted in each case. The dangerous-offender statute requires that courts determine that the offender is a danger to public safety, and a court should make this specific finding if it wants to impose a sentence under the statute.

## II.

Neal next argues that under the dangerous-offender statute severe aggravating factors are required for more than a double durational departure. In support of his position, Neal relies on *State v. Evans*, 311 N.W.2d 481 (Minn.1981), and other case law developed to interpret the Minnesota Sentencing Guidelines.

■ Under the sentencing guidelines, the presumptive sentence is presumed to be the appropriate sentence; however, when substantial and compelling circumstances exist, the guidelines authorize district courts to depart from the presumptive sentence. Minnesota Sentencing Guidelines II.D. In *Evans*, we articulated the general rule that when a durational departure is justified by compelling factors, the upper departure limit is double the maximum presumptive sentence length. 311 N.W.2d at 483. However, in unusually compelling cases, a double departure is not an absolute limit. *Id.* In such cases, even greater degrees of departure are justified. *Id.* Thus, when severe aggravating circumstances exist, the doubling limit of *Evans* does not apply. *State v. Glaraton*, 425 N.W.2d 831, 834 (Minn. 1988). We recently reiterated this exception to the general rule by concluding that departures up to the statutory maximum are appropriate when severe aggravating factors exist. *State v. Williams*, 608 N.W.2d 837, 840 (Minn.2000).

Here, the district court did not justify the departure under the sentencing guide-

lines, but imposed the durational departure under the dangerous-offender statute. Thus, we must determine whether the rule articulated in *Evans* applies when a court imposes a sentence under the dangerous-offender statute. More particularly, we must determine whether a court needs to find severe aggravating factors before it can use the dangerous offender statute to impose more than a double durational departure.

■ The dangerous-offender statute is a sentencing statute that permits durational departures not otherwise authorized by the sentencing guidelines. The sentencing guidelines require compelling circumstances to justify a durational departure, and *Evans* requires the existence of severe aggravating circumstances before a court may impose a sentence greater than double the presumptive sentence. *See* Minnesota Sentencing Guidelines II.D.; *Glaraton*, 425 N.W.2d at 834. In contrast, the dangerous-offender statute authorizes the court to impose an upward durational departure up to the statutory maximum if the offender (1) is at least 18 years old; (2) committed a violent crime that is a felony; (3) has two or more prior convictions for violent crimes; and (4) is a danger to public safety. The terms of the statute do not require the court to find severe aggravating factors before imposing the upward departure. Departures under the statute are justified on the basis of the offender's criminal history, not on aggravating factors. In addition, the terms of the statute do not limit the length of departures. The statute authorizes the court to impose a durational departure of any length, up to the statutory maximum, in all cases where the offender satisfies the statute's criteria.

■ In the past, we have affirmed the power of the legislature to create statutory grounds for increasing sentences beyond a double durational departure. *State v. Rachuy*, 502 N.W.2d 51, 52 (Minn.1993). In *Rachuy*, we concluded that the district court could have increased a four-year presumptive sentence for theft by swindle to the statutory maximum of ten years under an earlier version of the career offender statute, Minn.Stat. § 609.152, subd. 3 (1998).[4] We specifically stated that "the career offender statute * * * gives the trial court a legislatively-created ground for doing so." *Rachuy*, 502 N.W.2d at 52. Implicit in our analysis was our understanding that the statute authorized the sentence to be increased to the statutory maximum without the presence of severe aggravating circumstances.

■ Neal attempts to distinguish *Rachuy* on the ground that *Rachuy* was decided in the context of a theft offense with only a 10-year maximum sentence, while the present case involves a kidnapping offense with a 40-year maximum sentence. Neal argues that it is not clear that the court in *Rachuy* intended to extend the holding to all types of cases and all maximum sentences. Neal's argument fails. In *Rachuy*, we did not limit our holding to a specific type of offense or length of the maximum sentence. We simply held that when the legislature enacted the career offender statute, it created statutory grounds for imposing durational departures, up to the maximum statutory sentence. Our reasoning in *Rachuy* is equally applicable to the dangerous-offender stat-

---

4. The career offender statute, Minn.Stat. § 609.152, was recodified in 1998 to the present version, Minn.Stat. § 609.1095. Act effective August 1, 1998, ch. 367, art. 6, § 7, 1998 Minn. Laws 731, 735. The career offender statute is similar to the dangerous-offender statute in that both authorize courts to impose aggravated durational departures up to the statutory maximum based on specific criteria.

ute. Therefore, we conclude that a finding of severe aggravating factors is not required for a district court to impose more than a double durational departure under the dangerous-offender statute.

### III.

While we conclude that the dangerous-offender statute authorizes upward departures without a finding of severe aggravating circumstances, we stress that the statute does not envision the imposition of the statutory maximum sentence in every case. The statute gives courts discretion to impose a broad range of durational departures up to the statutory maximum. Minn.Stat. § 609.1095, subd. 2. In exercising this discretion, courts must be guided by the policy underlying the sentencing guidelines which is

> to establish rational and consistent sentencing standards which reduce sentencing disparity and ensure that sanctions following conviction of a felony are proportional to the severity of the offense of conviction and the extent of the offender's criminal history.

Minnesota Sentencing Guidelines I.

The dangerous-offender statute contravenes this purpose by authorizing sentences that may be disproportionate to the severity of the convicted offense. Under the dangerous-offender statute, the primary factor for imposing a durational departure is the offender's criminal history, but the offender's criminal history has already been factored into the presumptive sentence calculation. Thus, when severe aggravating circumstances are not present, imposing more than a double durational departure under the dangerous-offender statute may artificially exaggerate the defendant's criminality because the defendant's criminal record is considered twice. Although the statute permits this result by authorizing greater than double departures without severe aggravating circumstances, we conclude that to avoid disproportionate sentences, courts should use caution when imposing sentences that approach or reach the statutory maximum sentence.

### IV.

Having determined that severe aggravating factors are not required to impose more than a double durational departure under the dangerous-offender statute, we next consider Neal's contention that his 480–month sentence for the kidnapping is excessive and unreasonable. Under Minn.Stat. § 244.11, subd. 2(b), we have authority to review and modify a sentence that is unreasonable or excessive. The statute authorizes an appellate court to

> review the sentence imposed or stayed to determine whether the sentence is inconsistent with statutory requirements, unreasonable, inappropriate, excessive, unjustifiably disparate, or not warranted by the findings of fact issued by the district court.

Minn.Stat. § 244.11, subd. 2(b). In addition to this authority, we have discretion to modify a sentence in the interest of fairness and uniformity. *State v. Norris,* 428 N.W.2d 61, 70 (Minn.1988); *State v. Vazquez,* 330 N.W.2d 110, 112 (Minn.1983).

The district court sentenced Neal to the statutory maximum of 480 months for the kidnapping of Thao. The kidnapping offense consisted of Neal threatening Thao with a gun, transporting her from the front of the store to the bathroom in back, confining her in the bathroom for a period of approximately 10 minutes, tying her wrists, covering her head with tape, and slapping her in the face. Neal argues that the kidnapping was not so severe as to warrant the statutory maximum sentence.

■ In *State v. Morris*, 281 Minn. 119, 122–23, 160 N.W.2d 715, 717–18 (1968), we interpreted the kidnapping statute and concluded that the legislature purposefully omitted any references to time or distance, and that "limited confinement and restraint" is enough to establish the crime of kidnapping. We have upheld *Morris* in subsequent cases and concluded that under the kidnapping statute, Minn.Stat. § 609.25, the offender does not need to confine the victim for a substantial period of time or remove the victim a substantial distance to complete the offense. *State v. Budreau*, 641 N.W.2d 919, 929 (Minn. 2002); *State v. Crocker*, 409 N.W.2d 840, 844 (Minn.1987).

However, in light of the minimal statutory requirements of kidnapping, we have expressed concern that in some cases a conviction for kidnapping may unfairly exaggerate the offender's criminality. *Budreau*, 641 N.W.2d at 929–30; *Crocker*, 409 N.W.2d at 845; *Morris*, 281 Minn. at 123–24, 160 N.W.2d at 718. Specifically, in *Morris*, we held that in reviewing sentences under the kidnapping statute,

> [i]f under some circumstances the statutory penalty is unduly harsh, it is the duty of the * * * court * * * to modify the * * * sentence, or the period of confinement so that it will be commensurate with the gravity of the crime and the harm or potential harm which is inflicted by the defendant.

*Morris*, 281 Minn. at 124, 160 N.W.2d at 718.

Here, the impetus of the offense was the aggravated robbery of the store. It appears that Neal committed the offense of kidnapping to facilitate the robbery of the store. The statutory maximum sentence for first-degree aggravated robbery is 240 months. Minn.Stat. § 609.245, subd. 1. In essence, Neal was sentenced to an additional 240 months for the act of transporting Thao from the front of the store to the bathroom in the back of the store, and confining her for approximately 10 minutes. Neal asserts that the imposition of the statutory maximum sentence for kidnapping is not commensurate with the gravity of that offense.

Comparing Neal's 480–month kidnapping sentence, which is more than four times the presumptive sentence, to sentencing departures imposed in other kidnapping cases illustrates that Neal's sentence is excessive and unreasonable. In *State v. Norton*, the defendant took a five-year-old child from her front yard, drove her to a field 25 miles away from her home, threatened her with death, and sexually assaulted her. 328 N.W.2d 142, 143 (Minn.1982). The defendant was convicted of kidnapping under the same provision of the kidnapping statute as the present case. *Id.* We affirmed the 72–month sentence imposed by the district court, which was three times the presumptive sentence. *Id.* at 147. It is arguable that the kidnapping, which consisted of the defendant taking a child from her front lawn, transporting her miles from her home, and sexually assaulting her, is more egregious than the kidnapping in the present case. Here, the kidnapping lasted approximately 10 minutes, and Neal did not remove Thao from the store. However, Neal received a sentence more than four times the presumptive sentence, while the defendant in *Norton* received a sentence that was three times the presumptive sentence. Even if the conduct in *Norton* and the present case were comparable, the sentencing departures remain disparate.

In *State v. Montjoy*, the defendant participated in an armed robbery of a jewelry store. 366 N.W.2d 103, 106 (Minn. 1985). When the owner of the jewelry store was uncooperative, the defendant hit him repeatedly on the head, knocked him

down, and tied him up. *Id.* at 106. The defendant also ordered a customer to lie down in the back of the store. *Id.* The defendant was convicted of one count of aggravated robbery and two counts of kidnapping. We affirmed the 108–month sentence, which consisted of two consecutive 54–month prison terms. *Id.* at 111. At that time, a 54–month prison term was the presumptive sentence. The facts in the present case are comparable to the facts in *Montjoy*. However, Neal was sentenced to four times the presumptive sentence, while the defendant in *Montjoy* was given the guideline sentence with no departure. Additionally, Neal was also given a consecutive sentence for the robbery of Vang. Compared to the sentence in *Montjoy*, Neal's sentence is unreasonable as he received both a quadruple durational departure and a consecutive sentence.

It is undisputed that Thao was a vulnerable victim and suffered both physical injuries and emotional harm as a result of the kidnapping. Unquestionably Neal's conduct warrants severe punishment. But, when we view Neal's kidnapping of Thao in comparison to other cases, we conclude that his 480–month kidnapping sentence is not commensurate with the gravity of the crime and therefore is excessive and unreasonable. We hold that the district court erred when it sentenced Neal to 480 months for the kidnapping offense.

## V.

■ Finally, we consider Neal's argument that when added to the 480–month sentence, the 96–month double departure consecutive sentence imposed for the aggravated robbery of Vang unfairly exaggerates his criminality. We have already concluded that the 480–month sentence is excessive; therefore, we will consider the 96–month sentence in isolation. We will

not reverse a district court's decision to impose a consecutive sentence unless there has been a clear abuse of discretion. *State v. Smith*, 541 N.W.2d 584, 590 (Minn.1996).

■ To determine whether a double departure consecutive sentence unfairly exaggerates Neal's criminality, it is helpful to compare his sentence with sentences imposed on other offenders. *See State v. Norris*, 428 N.W.2d 61, 70 (Minn.1988). In *Smith*, we upheld a double departure from 48 months to 96 months for aggravated robbery and concluded that the sentence should run consecutively to a murder conviction. *Smith*, 541 N.W.2d at 590. During the armed robbery, the victim was knocked unconscious by the first punch. *Id.* at 590. After the victim fell to the floor, the defendant continued to kick and punch him. *Id.* The court found that the "gratuitous infliction of pain" used against the victim justified the double departure. *Id.* at 590. The court then concluded that the consecutive sentence was executed according to the guidelines and did not unfairly exaggerate the defendant's criminality. *Id.*

The robbery in *Smith* is factually similar to the robbery in the present case. Here, Neal used excessive force by beating Vang with his fists and with a gun and attempting to choke Vang with a wire. Vang suffered numerous serious injuries as a result of the assault, including a broken nose. The excessive force Neal used to accomplish the robbery of Vang was gratuitous and unnecessary to achieve the robbery. Review of our case law leads us to conclude that Neal's 96–month consecutive sentence for the aggravated robbery of Vang does not unfairly exaggerate his criminality.

In conclusion, we hold as follows: (1) Neal was properly sentenced under the dangerous-offender statute; (2) under the dangerous-offender statute, a district court

is not required to find severe aggravating factors before imposing a sentence that is greater than double the presumptive sentence; (3) the 480–month sentence imposed for the kidnapping is unreasonable and excessive; and (4) The 96–month consecutive sentence for the aggravated robbery of Vang does not unfairly exaggerate Neal's criminality. Therefore, we remand to the district court for a determination of a reasonable sentence for the kidnapping offense. A reasonable sentence will fall within the range of 216 to 240 months. The 240–month sentence is the statutory maximum for first-degree aggravated robbery, and the 216–month sentence is equivalent to a double departure of the 108–month presumptive sentence for the kidnapping.

Affirmed in part, reversed in part, and remanded.