*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1647**

State of Minnesota,
Respondent,

vs.

Robert Castillo,
Appellant.

**Filed August 17, 2015
Affirmed
Johnson, Judge**

Ramsey County District Court
File No. 62-CR-14-619

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Peter R. Marker, Assistant County Attorney, St.
Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Rochelle R. Winn, Assistant
Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Johnson, Presiding Judge; Peterson, Judge; and Ross,

Judge.

**U N P U B L I S H E D   O P I N I O N**

**JOHNSON**, Judge

A Ramsey County jury found Robert Castillo guilty of second-degree assault

based on evidence that he beat a former girlfriend on her head and arms with a hammer.

The jury also found Castillo to be a dangerous offender based on his prior convictions of felony offenses. The district court sentenced Castillo to the statutory maximum sentence of 120 months of imprisonment. Castillo argues that his sentence is too long. We affirm.

## FACTS

Castillo and the victim of his assault, A.C., were involved in a romantic relationship in 2013. During that time, A.C. was married to a man with immigration issues, which caused A.C. and her three children to lose their home. While A.C. was homeless, Castillo's sister, G.C., cared for A.C.'s infant son, M.C. M.C. continued to live with G.C. even after A.C. and her husband and other children found an apartment.

On January 24, 2014, G.C. had company at her home in St. Paul. Castillo and his then-girlfriend stopped by G.C.'s house. An argument ensued between G.C. and Castillo because Castillo said that he was going to take M.C. G.C. told Castillo that he could not take the baby and called A.C. to tell her that Castillo was trying to take the baby from her home.

A.C. arrived at G.C.'s house approximately an hour after receiving the telephone call. A.C. told Castillo that she did not want him to take the baby and that, if he did so, she would call the police. A.C. also told Castillo that he would be risking a kidnapping charge because of the possibility that M.C. is not his son. Castillo left the room. When he returned, he struck A.C. in the head with a hammer. A.C. fell to the floor and raised her hands to protect her head. Castillo then hit her forearms with the hammer. Castillo continued to hit A.C. with the hammer until G.C. chased him out of the house. Throughout the assault, A.C. could hear the baby crying as Castillo's girlfriend held him.

G.C. called 911. A.C. was transported to Regions Hospital's emergency room, where a physician determined that she had a superficial wound to her scalp, a fractured forearm, a fractured wrist, and a laceration on her left hand that required stitches.

The state charged Castillo with second-degree assault, in violation of Minn. Stat. § 609.222, subd. 2 (2012). In April 2014, the state moved for an increased sentence pursuant to the dangerous-offender statute, *see* Minn. Stat. § 609.1095, subd. 2 (2012), due to Castillo's prior violent felonies and an aggravating factor, namely, the presence of a minor child during the commission of the offense.

A bifurcated trial was held on two days in April 2014. In the first phase, the jury found Castillo guilty. In the second phase, the jury was asked to determine whether Castillo is a dangerous offender for sentencing purposes. Castillo stipulated that he has seven felony criminal convictions, including the conviction in this case. The jury found that Castillo is a danger to public safety because of his past criminal behavior and the existence of the presence-of-a-child aggravating factor.

At sentencing in June 2014, the state asked the district court to impose the statutory maximum sentence of 120 months because of Castillo's criminal history and the aggravating factor. Castillo's attorney asked the district court to impose a presumptive guidelines sentence of 57 months on the ground that Castillo did not intend to harm the child and because only one aggravating factor is present. The district court imposed the statutory maximum sentence of 120 months, a 63-month upward departure from the middle of the presumptive guidelines range. In explaining its departure, the district court stated:

3

The reasons for the departure are based upon the decisions of the jury that were submitted to them in a separate proceeding after they found you guilty of the offense. The jury found that you are a public safety risk, that you are a dangerous and repeat felony offender and you've been convicted of at least three prior felony crimes. This is your seventh felony and you have a long history of violent offenses and the use of weapons on prior occasions.

In addition, this offense was committed in the presence of your son. And while, I guess, it's speculation to try to figure out what impact it might have on him, if any, your son was there, present when all that was going on. And it's difficult to figure what type of impact that's going to have on him as he grows up. Certainly, the idea that you could commit a crime like that against the child's mother, disregarding the presence of your son, I think that's a serious matter.

Castillo appeals.

# DECISION

Castillo argues that the district court erred by imposing the statutory maximum sentence of 120 months. Castillo does not dispute that he is a dangerous offender or that the district court is authorized to sentence him pursuant to the dangerous-offender statute. He argues merely that the imposition of the statutory maximum sentence is "disproportionate, unreasonable, and unjustifiable" in the circumstances of this case.

The district court relied on the jury's finding that Castillo is a dangerous offender under section 609.1095, subdivision 2. "The dangerous-offender statute is a sentencing statute that permits durational departures not otherwise authorized by the sentencing guidelines." *Neal v. State*, 658 N.W.2d 536, 545 (Minn. 2003). A person is a dangerous offender if (1) the offender was at least 18 years old at the time the felony was

4

committed, (2) the offender has two or more prior convictions for violent crimes, and (3) the factfinder determines that the offender is a danger to public safety. Minn. Stat. § 609.1095, subd. 2. The third requirement, that a defendant is a danger to public safety, may be based on "(i) the offender's past criminal behavior, such as the offender's high frequency rate of criminal activity . . . or long involvement in criminal activity . . . ; or (ii) the fact that the present offense of conviction involved an aggravating factor that would justify a durational departure under the Sentencing Guidelines." Minn. Stat. § 609.1095, subd. 2(2)(i)-(ii). If the requirements of section 609.1095, subdivision 2, are satisfied, the district court may impose an upward durational departure up to the statutory maximum sentence, even if severe aggravating circumstances are not present. *Id.*; *Neal*, 658 N.W.2d at 545-46. This court applies an abuse-of-discretion standard of review to the length of a sentence based on the dangerous-offender statute. *See Neal*, 658 N.W.2d at 546-48; *see also Vickla v. State*, 793 N.W.2d 265, 269 (Minn. 2011) (reviewing sentence imposed pursuant to Minn. Stat. § 609.1095, subd. 4 (2010)).

Castillo relies on the supreme court's admonition in *Neal* that, "to avoid disproportionate sentences, courts should use caution when imposing sentences that approach or reach the statutory maximum sentence." 658 N.W.2d at 546. In *Neal*, the appellant was convicted of kidnapping and aggravated robbery. *Id.* at 541. The district court sentenced the appellant under the dangerous-offender statute to the statutory maximum sentence of 480 months for the kidnapping conviction and 96 months for the aggravated-robbery conviction. *Id.* at 541-42. The supreme court considered whether the sentences were excessive and unreasonable. *Id.* at 543. The supreme court concluded

that the 480-month kidnapping sentence, which was more than four times the presumptive sentence, was excessive under the circumstances of the case, in which a victim was confined briefly in a bathroom to facilitate the aggravated robbery of a store. *Id.* at 547-48. In reaching its conclusion, the supreme court compared the 480-month sentence to sentencing departures in other kidnapping cases, which indicated that the appellant's sentence was unduly long. *Id.* The supreme court cautioned that, "when severe aggravating circumstances are not present, imposing more than a double durational departure under the dangerous-offender statute may artificially exaggerate the defendant's criminality because the defendant's criminal record is considered twice." *Id.* at 546.

In this case, the 120-month statutory maximum sentence for second-degree assault is approximately twice as long as the presumptive sentencing range based on Castillo's criminal history score of six and an offense severity level of six. To be specific, the applicable range is 49 to 68 months, with a mid-point of 57 months. *See* Minn. Sent. Guidelines 4.A. (Supp. 2013) (sentencing guidelines grid). Accordingly, the sentence imposed is slightly more than twice the middle of the sentencing range and slightly less than twice the high end of the range. In any event, the record indicates that the district court used the requisite caution when it imposed the sentence. *See Neal*, 658 N.W.2d at 546. The district court expressly considered the jury's finding that Castillo is a danger to public safety because of his past criminal behavior. *See* Minn. Stat. § 609.1095, subd. 2(2)(i). The district court also considered the fact that Castillo's conviction is his seventh felony conviction. Castillo stipulated that he has three prior assault convictions. He also

6

stipulated to prior convictions for the dangerous discharge of a weapon, possession of a firearm by an ineligible person, and second-degree controlled substance crime. Castillo committed these offenses between 2001 and 2014. At the time of sentencing, Castillo had been incarcerated for 11 of the previous 12 years of his life. These facts indicate that the statutory maximum sentence is not excessive and unreasonable.

Our review of the question whether Castillo's sentence unfairly exaggerates his criminality is "guided by past sentences imposed on other offenders." *State v. McLaughlin*, 725 N.W.2d 703, 715 (Minn. 2007) (quotation omitted); *see also Vickla*, 793 N.W.2d at 270 (stating that "appellate court[s] may consider, among other things, comparable sentences in departure cases to determine if a sentence is unjustifiably disparate"). In making that comparison, we focus on sentences imposed on similarly situated offenders. *Vickla*, 793 N.W.2d at 270. Our review reveals only one case with the same offense and the same type of departure. In *State v. Whisonant*, No. C8-02-1227, 2003 WL 21321434 (Minn. App. June 10, 2003), *review denied* (Minn. Aug. 19, 2003), this court affirmed the imposition of the statutory maximum sentence for second-degree assault in a case in which the appellant attempted to stab the victim with a sharp object but did not inflict any injuries. *Whisonant*, 2003 WL 21321434, at *3. Castillo struck A.C. with a hammer several times on her head and arms, causing two fractures, a scalp injury, and a flesh wound requiring stitches. Castillo ended the assault only because his sister intervened. The district court found the assault to be a "serious matter." We are convinced that Castillo's assault was at least as egregious as the assault in *Whisonant* and

probably more egregious. This comparison further indicates that the statutory maximum sentence is not excessive and unreasonable.

In light of our review of the record and our review of a sentence imposed in a similar case, we conclude that Castillo's 120-month sentence is not excessive and unreasonable. Thus, the district court did not err by imposing the statutory maximum sentence.

Castillo also contends that the jury's finding of an aggravating factor does not justify the departure. Because we have determined that the district court properly sentenced Castillo based on the dangerous-offender statute, we need not consider whether the departure is justified by the presence of the aggravating factor.

**Affirmed.**