*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2052**

State of Minnesota,
Respondent,

vs.

Rudolph Gordon Cooper,
Appellant.

**Filed September 14, 2015
Affirmed
Schellhas, Judge**

Anoka County District Court
File No. 02-CR-13-6007

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Anthony C. Palumbo, Anoka County Attorney, Jon C. Audette, Assistant County Attorney, Anoka, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Amy Lawler, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Reyes, Presiding Judge; Schellhas, Judge; and Harten, Judge.[*]

---

[*]  Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**SCHELLHAS**, Judge

Appellant challenges the district court's (1) denial of his presentencing motions to withdraw his guilty plea to third-degree assault and (2) imposition of a greater-than-double upward departure sentence. We affirm.

## FACTS

In September 2013, while on probation for third-degree assault, appellant Rudolph Cooper struck the face of his romantic partner, J.H., at least three times. The blows fractured J.H.'s nose and caused her to bleed, and she received treatment at a hospital for her injuries. Respondent State of Minnesota charged Cooper with third-degree assault (substantial bodily harm) and gross-misdemeanor domestic assault (harm). The state noticed its intent to seek a durational departure based on Cooper's status as a dangerous offender under Minn. Stat. § 609.1095, subd. 2 (2012).

Cooper pleaded guilty to third-degree assault, waived his right to a jury determination on his dangerous-offender status, and agreed to serve 32 months' imprisonment consecutively to any executed sentence resulting from the probation violation. In exchange, the state agreed to dismiss the domestic-assault charge and a separately charged offense of failure to register as a predatory offender. The district court denied Cooper's presentencing motions to withdraw his guilty plea, determined that Cooper was a dangerous offender as defined by section 609.1095, and sentenced him to 32 months' consecutive imprisonment.

This appeal follows.

## D E C I S I O N

### *Plea withdrawal*

"A defendant has no absolute right to withdraw a guilty plea after entering it," *State v. Raleigh*, 778 N.W.2d 90, 93 (Minn. 2010), and "defendants may not withdraw their guilty pleas for simply any reason before a sentence is imposed," *State v. Farnsworth*, 738 N.W.2d 364, 372 (Minn. 2007). But

> [i]n its discretion the court may allow the defendant to withdraw a plea at any time before sentence if it is fair and just to do so. The court must give due consideration to the reasons advanced by the defendant in support of the motion and any prejudice the granting of the motion would cause the prosecution by reason of actions taken in reliance upon the defendant's plea.

Minn. R. Crim. P. 15.05, subd. 2. "We review a district court's decision regarding a motion to withdraw a guilty plea under the fair-and-just standard for an abuse of discretion, reversing only in the 'rare case.'" *State v. Cubas*, 838 N.W.2d 220, 223 (Minn. App. 2013) (quoting *Kim v. State*, 434 N.W.2d 263, 266 (Minn. 1989)), *review denied* (Minn. Dec. 31, 2013); *see also* Minn. R. Crim. P. 15.05, subd. 2 (providing that "*[i]n its discretion* the court *may* allow the defendant to withdraw a plea at any time before sentence if it is fair and just to do so" (emphasis added)).

In this case, Cooper twice moved to withdraw his guilty plea before sentencing. Cooper based his first motion on a December 2013 letter from J.H. to the district court and J.H.'s February 2014 affidavit, in which she stated that she was intoxicated and "belligerent" with Cooper on the night of the assault, "aggressively taunting" him and trying to drive drunk. Cooper based his second motion on a medical report that describes

3

the injury to J.H.'s nose as a "minimally displaced nasal bone fracture" that "is displaced a few millimeters, 2–3 mm"; notes a "[s]light deformity near the tip of the nasal bone likely representing a minimally depressed fracture"; and states that "[t]here appears to be a fracture near the tip of the nasal bone."

Cooper asserts the "possib[ility]" that J.H.'s statements would have been "enough to support a self-defense claim at trial" and argues that it would have been fair and just to permit him to withdraw his guilty plea to allow him to pursue a self-defense claim. The district court considered that, before J.H. sent the December 2013 letter, Cooper telephoned her at least six times, urging her to contact the court on his behalf. By making these calls, Cooper violated a domestic-abuse no-contact order that prohibited him from having any contact with J.H. The court said, "[J]ust and fair is a two-way street. . . . [I]t's . . . not just and fair to the State to have a defendant breaking the law to create evidence that somehow might mitigate some of the allegations." We conclude that the court did not abuse its discretion by denying Cooper's first plea-withdrawal motion.

As to his second motion, Cooper argues that "equivocal phrasing" in the medical report casts doubt on the "substantial bodily harm" element of his third-degree assault conviction, essentially suggesting that the report constitutes evidence that he could have used at trial to undermine the state's case by showing that J.H.'s nose was not broken by the blows he struck. According to Cooper:

> It is not immediately clear, upon first inspection, what the report means when it states that there "appears" to be a fracture, or that the slight deformity noted on the report was "likely" a minimally depressed fracture. These would be appropriate questions to ask of a medical professional on the

4

witness stand at trial, as the line between "appears," "likely," and "beyond a reasonable doubt" is certainly in question.

But Cooper makes no assertion that his counsel did not have access to the report prior to his plea of guilt; he asserts only that he did not personally review the report before pleading guilty.[1] But at the plea hearing, Cooper agreed that he had "come to learn . . . [f]rom a doctor's report" that J.H.'s nose "was broken as a result" of the blows. In any event, Cooper's alleged "mistaken apprehension of the strength of the state's case" against him did not entitle him to withdraw "his own plea of guilty, which was based on an admission of guilt and on a statement that he was pleading guilty because he was guilty." *See State v. Tuttle*, 504 N.W.2d 252, 256–57 (Minn. App. 1993) (quotation omitted). We conclude that the district court did not abuse its discretion by denying Cooper's second plea-withdrawal motion.

***Sentencing departure***

The Minnesota Sentencing Guidelines are advisory and establish "[a] presumptive, fixed sentence for offenders for whom imprisonment is proper, based on each appropriate combination of reasonable offense and offender characteristics." *See* Minn. Stat. § 244.09, subd. 5 (2014). "[Appellate courts] review a district court's decision to depart from the presumptive guidelines sentence for an abuse of discretion. If the reasons given are legally permissible and factually supported in the record, then [appellate courts] will

---

[1] In his second plea-withdrawal motion, Cooper acknowledged that the report was included in the state's "discovery file" but claimed that his counsel failed to give the report to him.

5

affirm the departure." *Vickla v. State*, 793 N.W.2d 265, 269 (Minn. 2011) (quotation and citation omitted).

"The sentencing guidelines require compelling circumstances to justify a durational departure, and [Minnesota caselaw] requires the existence of severe aggravating circumstances before a court may impose a sentence greater than double the presumptive sentence." *Neal v. State*, 658 N.W.2d 536, 545 (Minn. 2003). But "[t]he dangerous-offender statute is a sentencing statute that permits durational departures not otherwise authorized by the sentencing guidelines." *Id.* That statute provides:

> Whenever a person is convicted of a violent crime that is a felony, and the judge is imposing an executed sentence based on a Sentencing Guidelines presumptive imprisonment sentence, the judge may impose an aggravated durational departure from the presumptive imprisonment sentence up to the statutory maximum sentence if the offender was at least 18 years old at the time the felony was committed, and:
>
> (1) the court determines on the record at the time of sentencing that the offender has two or more prior convictions for violent crimes; and
> (2) the fact finder determines that the offender is a danger to public safety. The fact finder may base its determination that the offender is a danger to public safety on the following factors:
>
> (i) the offender's past criminal behavior, such as the offender's high frequency rate of criminal activity or juvenile adjudications, or long involvement in criminal activity including juvenile adjudications; or
> (ii) the fact that the present offense of conviction involved an aggravating factor that would justify a durational departure under the Sentencing Guidelines.

Minn. Stat. § 609.1095, subd. 2.

Under the dangerous-offender statute, the offender's criminal history, not aggravating factors, justifies the departure. *Neal*, 658 N.W.2d at 545 ("Departures under the statute are justified on the basis of the offender's criminal history, not on aggravating factors."). "[T]he terms of the statute do not limit the length of departures. The statute authorizes the court to impose a durational departure of any length, up to the statutory maximum, in all cases where the offender satisfies the statute's criteria." *Id.* "[A] finding of severe aggravating factors is not required for a district court to impose more than a double durational departure under the dangerous-offender statute." *Id.* at 546.

In this case, Cooper had a criminal-history score of 6.5 and an unexpired sentence for his prior third-degree assault conviction. The presumptive sentence therefore was either (1) 30 months' imprisonment, with a discretionary range of 26 to 36 months, to be served concurrently with the unexpired sentence; or (2) imprisonment for 1 year and 1 day, to be served consecutively to the unexpired sentence. *See* Minn. Sent. Guidelines 4.A (providing for presumptive sentence of 30 months' imprisonment, with discretionary range of 26 to 36 months, for severity-level 4 offense with criminal-history score of 6 or more, and providing for presumptive sentence of imprisonment for 1 year and 1 day for severity-level 4 offense with criminal-history score of 0), 5.A (providing that third-degree assault is severity-level four offense), 6 (listing third-degree assault as offense that is eligible for permissive consecutive sentencing) (2012); *State v. Holmes*, 719 N.W.2d 904, 908 (Minn. 2006) ("If a consecutive sentence is permissive . . . , a criminal history score of zero is assigned to determine the duration of the sentence."). Because the district court sentenced Cooper to 32 months' consecutive imprisonment, the court imposed a greater-

7

than-double durational departure. The court recognized that Cooper's sentence was an upward durational departure and stated that the departure was "based on an aggravated factor that he qualifies under [dangerous] offender status." The court also found that "[Cooper] is a dangerous offender pursuant to Minn. Stat. § 609.1095 and that [Cooper]'s past criminal behavior, the nature of his offenses, and his long involvement in criminal activity indicate that [Cooper] is a danger to public safety."

Cooper does not challenge the district court's dangerous-offender finding; rather, he argues that "Minnesota's courts have long held that, even in the context of a defendant who has been found to be a dangerous offender, there must generally be severe aggravating circumstances in order for the defendant to receive more than double the presumptive sentence." While Cooper correctly notes that the court did not point to any severe aggravating circumstances, Cooper mischaracterizes the caselaw on this issue. Inexplicably, Cooper cites *Neal* in support of his argument. Yet, as noted above, *Neal* expressly held that "a finding of severe aggravating factors is *not* required for a district court to impose more than a double durational departure under the dangerous-offender statute."[2] 658 N.W.2d at 546 (emphasis added); *accord Vickla*, 793 N.W.2d at 271. Cooper's severe-aggravating-circumstances argument is meritless.

---

[2] Although the supreme court reversed Neal's sentence in part, it did so based on its conclusion that "[Neal's] 480-month kidnapping sentence [wa]s not commensurate with the gravity of the crime and therefore [wa]s excessive and unreasonable." *Neal*, 658 N.W.2d at 548–49. The court relied on a statute—not caselaw regarding severe aggravating circumstances—in reaching its conclusion. *See id.* at 545–47. That statute still provides that an appellate court may reverse a sentence that "is inconsistent with statutory requirements, unreasonable, inappropriate, excessive, unjustifiably disparate, or

8

Cooper also asserts in conclusory fashion that a greater-than-double upward departure sentence "unfairly exaggerates the criminality of [his] offense," but he fails to identify any case in which criminal conduct similar to his own, or more serious than his own, was punished more leniently. Indeed, because Cooper fails to cite any authority in support of his passing assertion, he arguably has forfeited the issue. *See State v. Thomas*, 590 N.W.2d 755, 759 (Minn. 1999) (stating that "[appellate courts] will not consider any claim lacking supporting argument or authority unless prejudicial error appears obvious upon inspection of the record" (quotation omitted)). We nonetheless consider whether Cooper's sentence "is inconsistent with statutory requirements, unreasonable, inappropriate, excessive, unjustifiably disparate, or not warranted by the findings of fact issued by the district court." *See* Minn. Stat. § 244.11, subd. 2(b); *cf. Vickla*, 793 N.W.2d at 270 (stating that "[appellate courts] have consistently applied [section 244.11, subdivision 2(b)] to review sentences imposed by district courts").

The supreme court has advised district courts to "use caution when imposing sentences that approach or reach the statutory maximum sentence." *Neal*, 658 N.W.2d at 546. But Cooper's 32-month sentence is only slightly more than *half* the maximum sentence that may be imposed for his crime. *See* Minn. Stat. § 609.223, subd. 1 (2012) (providing that "[w]hoever assaults another and inflicts substantial bodily harm may be sentenced to imprisonment for not more than five years"). Under the circumstances of this case—which include J.H.'s nasal fracture and hospital treatment—we conclude that

---

not warranted by the findings of fact issued by the district court." Minn. Stat. § 244.11, subd. 2(b) (2014).

9

Cooper's sentence is commensurate with the gravity of his crime and therefore is not excessive or unreasonable.

**Affirmed.**