**STATE of Minnesota, Respondent,**

v.

**Charles Theo McINTOSH,
Petitioner, Appellant.**

No. C9–00–1054.

Supreme Court of Minnesota.

March 21, 2002.

Michael A. Hatch, Attorney General, Thomas R. Ragatz, No. 236822, Assistant Attorney General, St. Paul, MN, Raymond F. Schmitz, No. 97159, Olmsted County Attorney, Rochester, MN, Respondent's.

Michael F. Crommett, No. 19896, Assistant State Public Defender, Minneapolis, MN, Appellant's.

## OPINION

STRINGER, Justice.

Appellant Charles Theo McIntosh was charged with and convicted of four controlled substance offenses for selling crack cocaine. On the fourth conviction, controlled substance offense in the second degree for the sale of 3 grams or more of cocaine as defined in Minn.Stat. § 152.022 (1998), the district court upwardly departed from the presumptive guideline sentence of 98 months and imposed a sentence of 122 months on the ruling that the sale was a "major controlled substance offense" as defined in Minnesota Sentencing Guidelines II.D.2.b(5). The court of appeals affirmed that ruling. We conclude that the record does not support the ruling that the sale constituted a major controlled substance offense. We therefore reverse, vacate the sentencing departure, and remand to the district court for the imposition of the presumptive guidelines sentence.

In late 1998 an informant notified Rochester, Minnesota police that appellant was selling crack cocaine and the informant agreed to purchase drugs as part of an investigation. Over the course of six weeks the informant purchased crack cocaine from appellant or his associates in five "controlled buys," two of them with an undercover detective. The first purchase occurred on November 25, 1998, when the informant and appellant arranged to meet at a grocery store. At the store the informant met Jeremy Wiley who told the informant he was with "Bullet," appellant's

street name. The informant purchased 1.3 grams of crack cocaine from Wiley.[1] At trial Wiley testified that he received the crack cocaine from appellant, gave the informant's money to appellant, and made the sale to the informant because appellant asked him to do so. Wiley also testified that he and appellant traveled to Chicago together to procure powder cocaine which appellant processed into crack cocaine upon their return, and that appellant sometimes had Wiley drive to drug transactions.

A second transaction took place on November 27, 1998, when Wiley drove appellant to the sale and the informant gave appellant $500 for 2.3 grams of crack cocaine.

The third transaction occurred on December 7, 1998, after the informant called appellant's cell phone and spoke with appellant's associate Lana Tzul.[2] When appellant arrived at their designated meeting place the informant got into the back seat of the vehicle with Tzul who explained that appellant was not talking much because he was "just really crabby." In the transaction appellant handed the two rocks, weighing 3.2 grams and 2.9 grams, to Tzul who then handed them to the informant.

The informant and an undercover police officer subsequently bought a total of 34.9 grams of crack cocaine from appellant's associates in two transactions. Testimony relating to those sales revealed that Tzul told the informant "talking to me is like talking to [appellant]."[3]

---

1. The police believed that the informant bought 3.2 grams of crack cocaine at this time, but the Bureau of Criminal Apprehension (BCA) determined that the crack actually weighed 1.3 grams.

2. Lana Tzul was also known as Lana Daniels.

3. On December 18, 1998, the informant called appellant's cell phone and arranged for

her "friend," an undercover police officer, to buy crack cocaine from Lana Tzul. The officer bought packages of crack cocaine, containing a total of 23.4 grams. On January 7, 1999, after a series of phone calls to appellant's cell phone, the informant arranged with Tzul to buy 11.5 grams of cocaine from Tzul's associate Sharet Williams. The next day police executed a search warrant of Williams's

The state ultimately charged appellant with conspiracy to commit controlled substance offense in the first degree as defined in Minn.Stat. § 152.096, subd. 1 (2000) and Minn.Stat. § 152.021, subd. 1(1) (1998), controlled substance offense in the second degree as defined in Minn.Stat. § 152.022, subd. 1(1) (1998), and two counts of controlled substance offense in the third degree as defined in Minn.Stat. § 152.023, subd. 1(1) (1998).

Appellant waived his right to a jury trial and to the district court he denied ever selling drugs to the informant—he claimed that audio and video tapes of the transactions recorded by police establish that he was actually buying stolen merchandise from her. The court found appellant guilty of one count of conspiracy to commit controlled substance crime in the second degree for drug transactions between November 25, 1998 and January 8, 1999,[4] one count of controlled substance offense in the second degree for the transaction on December 7, 1998 and two counts of controlled substance crime in the third degree for transactions on November 25 and 27, 1998.

At sentencing the state argued for an upward departure claiming appellant had committed a "major controlled substance offense" because his conviction met the factors in Minnesota Sentencing Guidelines II.D.2.b(5). The guidelines provide that a major controlled substance offense is "an offense or series of offenses related to trafficking in controlled substances under circumstances more onerous than the usu-

al offense" and occurs where two or more of the following factors are present:

(a) the offense involved at least three separate transactions wherein controlled substances were sold, transferred, or possessed with intent to do so; or

(b) the offense involved an attempted or actual sale or transfer of controlled substances in quantities substantially larger than for personal use; or

(c) the offense involved the manufacture of controlled substances for use by other parties; or

(d) the offender knowingly possessed a firearm during the commission of the offense; or

(e) the circumstances of the offense reveal the offender to have occupied a high position in the drug distribution hierarchy; or

(f) the offense involved a high degree of sophistication or planning or occurred over a lengthy period of time or involved a broad geographic area of disbursement; or

(g) the offender used his or her position or status to facilitate the commission of the offense, including positions of trust, confidence or fiduciary relationships (e.g., pharmacist, physician or other medical professional).

Minnesota Sentencing Guidelines II. D.2.b(5).

In its motion for an upward sentencing departure the state argued that factors (a) three or more separate transactions, (b)

---

hotel room and found a digital scale, cash, a small amount of marijuana, and approximately 100 grams of crack cocaine.

4. In order to find appellant guilty of conspiracy to commit controlled substance crime in the first degree, the state was required to prove that appellant had conspired to sell 10 or more grams of cocaine on a particular occasion. *See* Minn.Stat. § 152.096 (2000)

and Minn.Stat. § 152.021 (1998). At the end of the trial the court noted that the state had not adequately proved the elements of first-degree conspiracy because the evidence of the last two transactions, in which the informant and the undercover officer bought 34.9 grams of crack cocaine from appellant's associates, was not sufficiently connected to appellant.

sale of quantities substantially larger than for personal use, and (e) high position in the drug distribution hierarchy, were present in the charged offenses, but did not specify upon which charge the court should depart. The district court imposed a presumptive guidelines sentence for the second-degree conspiracy offense and both third-degree sale offenses. As to the fourth offense—second-degree sale of controlled substances—the presumptive sentence was 98 months. The court agreed with the state that factors (a), (b), and (e) of the major controlled substance offense sentencing guidelines criteria were present in the second-degree sale offense and upwardly departed from the presumptive sentence of 98 months by adding 24 months for a total sentence of 122 months on that count.

To the court of appeals appellant alleged several claims of district court error: allowing a prosecution witness to testify about appellant's illegal drug activities that occurred before the charging dates of the criminal complaint; insufficient evidence to sustain his conspiracy conviction; erroneously calculating his criminal history score; concluding that the conspiracy offense and individual controlled substance offenses were not one behavioral incident for purposes of sentencing; and departing from the presumptive sentence on the second-degree sale conviction.[5]

The court of appeals remanded for recalculation of appellant's criminal history score[6] but affirmed on all other issues. As to the sentencing departure, the court held that the departure was appropriate because the record supported the district

court findings of three major controlled substance offense factors under II.D.2.b(5) of the Sentencing Guidelines. In its analysis however, the court of appeals considered factors (b), (c) and (e), having substituted factor (c) manufacture of controlled substances for other parties, for factor (a) three or more separate transactions, which was the factor relied upon by the district court. The court held that the record supported a finding that factors (b), (c), and (e) were present and that the district court did not abuse its discretion in imposing an upward departure on the second-degree controlled substance conviction for the drug transaction on December 7. We granted appellant's petition for review only on the issue of the sentencing departure.

On appeal here appellant makes several arguments: that the record does not support the sentencing departure, that the major controlled substance offense aggravating factors duplicate the considerations incorporated in statutes relating to drug crimes and presumptive sentences, and that his sentence is disproportionate to his criminality and to sentences in similar cases. The state responds that the record adequately supports the factors cited by the court of appeals—the departure was warranted because more than double the amount of cocaine necessary for a second-degree conviction was involved in the offense, because appellant cooked powder cocaine and packaged it, and because appellant was a leader of an ongoing drug conspiracy. The state also argues that the departure guidelines do not duplicate the considerations of the drug statutes, and

---

5. In a pro se brief appellant also argued that he did not possess the cocaine, his counsel was ineffective, and he was a victim of racial profiling.

6. The court of appeals held that appellant's criminal history score may have been miscalculated because of confusion over whether a prior Illinois conviction for possession of a stolen vehicle should be considered a gross misdemeanor or a felony under Minnesota law, a ruling not appealed to this court.

that if we find the record does not support a departure on the second-degree conviction for the December 7 transaction, we should remand to the district court for consideration of an upward departure from the presumptive sentence on the second-degree conspiracy conviction for drug transactions between November 25 and January 8 and upwardly depart on that charge.

 Substantial and compelling circumstances must be present in the record to justify departures from the applicable presumptive sentences in the Minnesota Sentencing Guidelines. *Rairdon v. State,* 557 N.W.2d 318, 326 (Minn.1996). Our standard of review of such departures is abuse of discretion. *Id.* In *Williams v. State,* we established the following rules to ensure that departures comply with sentencing guidelines requirements:

1. If no reasons for departure are stated on the record at the time of sentencing, no departure will be allowed.

2. If reasons supporting the departure are stated, this court will examine the record to determine if the reasons given justify the departure.

3. If the reasons given justify the departure, the departure will be allowed.

4. If the reasons given are improper or inadequate, but there is sufficient evidence in the record to justify departure, the departure will be affirmed.

5. If the reasons given are improper or inadequate and there is insufficient evidence of record to justify the departure, the departure will be reversed.

361 N.W.2d 840, 844 (Minn.1985).

## I.

We first consider whether the district court properly relied upon factors that qualified the second-degree sale conviction for departure as a major controlled substance offense under Minnesota Sentencing Guidelines II.D.2.b(5). At sentencing, the district court concluded that the December 7 sale was a major controlled substance offense based on findings that: (a) the offense involved three or more separate transactions; (b) it was an attempted or achieved sale or transfer of controlled substances in quantities substantially larger than for personal use; and (e) appellant occupied a high position in the drug distribution hierarchy. The court reasoned as follows:

> As to the motion for an upward departure, * * * I believe a Second Degree Controlled Substance Crime is a major controlled substance offense. * * * The State has cited two or three [aggravating factors]: Major controlled substance crime involving three or more separate transactions; attempted or achieved sale or transfer of controlled substances in quantities substantially larger than for personal use; and the circumstance of the offense reveal the offender to have occupied a high position in the drug distribution hierarchy.
>
> I believe that there was substantial evidence that all three of those factors exist here. It appeared from the statements that were admitted, the transcripts of phone conversations, that this was—this clearly was a conspiracy to sell and distribute drugs and that the defendant was, if not the leader or the mastermind, at least the major partner. In a business setting he might be considered the managing general partner as opposed to a regular or general partner.
>
> Accordingly, I believe there is a basis for a departure and will depart from the guideline sentence of 98 for—to add an additional 24 months to the guideline sentence for a total of 122.

The court of appeals affirmed the ruling that factors (b) and (e) were present but

without explanation substituted factor (c) manufacture of controlled substances for use by other parties for factor (a). We address each of the factors cited by the district court and court of appeals.

*Factor (a)—Three or more separate transactions*

■ Appellant argues that because he was found guilty of a second-degree controlled substance offense for the transaction on December 7 and the district court based the upward departure on this conviction, evidence pertaining to transactions on other days for which he was also convicted may not support a departure on the December 7 offense for purposes of factor (a). We agree. Appellant was convicted of a controlled substance offense in the second degree for the sale of 6.1 grams of crack cocaine on December 7. Because evidence of transactions on other dates pertains to separate charged offenses and not "the offense" of conviction, it cannot support a finding of factor (a) of the major controlled substance departure guidelines. *See* Minnesota Sentencing Guidelines II. D.2.b(5). In *State v. Spaeth* we held that the court may not rely on conduct underlying one conviction to support a sentencing departure for a separate conviction. 552 N.W.2d 187, 196 (Minn.1996). We conclude that other transactions on other dates for which appellant was convicted cannot be taken into account to support a departure on the conviction for the December 7 transaction. The district court improperly relied on factor (a) in departing on the sentence for the second-degree conviction.

*Factor (b)—Sale of quantities substantially larger than for personal use*

■ The district court made no specific findings to support a conclusion that the sale involved quantities substantially larger than for personal use, and the record provides no support for a finding that the 6.1 grams of crack cocaine sold on December 7 was a quantity substantially larger than for personal use.[7] The state cites the presentence report which contains the following statement: "The amounts sold where [sic] for more than personal use; an eight ball would divide into approximately 12 rocks."[8] This conclusory statement fails to provide any basis to establish how

---

7. The court of appeals affirmed the district court on factor (b), the court of appeals citing *State v. Collard*, 414 N.W.2d 733, 736 (Minn. App.1987), *rev. denied* (Minn. Jan. 15, 1988) for the proposition that 5 grams of cocaine is a quantity substantially larger than for personal use. *Collard* does not support that conclusion however, because the testimony that 5 grams of cocaine was a quantity larger than for personal use was substantially eroded by the witness conceding on cross-examination that a heavy user could consume 5 grams in one week. *Collard*, 414 N.W.2d at 735–36.

Other decisions of the court of appeals have applied the phrase "quantities substantially larger than for personal use" without a discussion of its meaning. *See, e.g., State v. Nelson*, No. C5–98–2278, 1999 WL 735869 at *6 (Minn.App. Sept.21, 1999) (apparently relying not on actual weight of drugs but on visible size of drugs found to conclude that

the quantities "far exceed[ed] what one would need for personal use"); *See, e.g., State v. Lilly*, No. C1–96–653, 1996 WL 745214 at *2 (Minn.App. Dec.31, 1996) (holding that because 5.2 grams of cocaine is only slightly greater than the 3 gram statutory minimum for offense, it was not a quantity substantially larger than for personal use); *See, e.g., State v. Stevens*, No. C0–94–221, 1994 WL 121607 at *1 (Minn.App. Apr.12, 1994) (concluding 13.1 grams of cocaine was a quantity substantially larger than for personal use, based on the conclusion in *Collard* that 5 grams is a quantity larger than for personal use).

8. The quoted statement was typed under the heading "Law Enforcement" and it is unclear whether the statement reflects an allegation by law enforcement or the view of the author of the report, an employee of the Department of Corrections.

much crack cocaine constitutes a quantity larger than for personal use however, and in particular, that 6.1 grams meets that standard.[9] Therefore we conclude that the record does not adequately support a finding that the second-degree offense involved factor (b), the sale of quantities substantially larger than for personal use.

### Factor (c)—Manufacture of controlled substances for use by other parties

■ The court of appeals held that the record supported a finding of factor (c), the manufacture of controlled substances for use by other parties. The court based its conclusion on evidence that appellant manufactured the powder cocaine he purchased by cooking it to make crack cocaine and presumably based on Jeremy Wiley's testimony that he and appellant went to Chicago to procure powder cocaine and then cooked it to make crack cocaine. No particular sale of the manufactured crack cocaine was identified however, and there was no evidence that the crack cocaine sold on December 7 was manufactured by appellant. Wiley's testimony relating to processing powder cocaine is insufficient to meet the threshold of factor (c) without further evidence establishing that the December 7 sale involved the manufacture of controlled substances for use by others. We find none and therefore conclude that the record fails to establish the presence of factor (c) in the December 7 drug transaction.

### Factor (e)—High position in the drug distribution hierarchy

■ The district court also found that appellant held a high position in the drug distribution hierarchy for purposes of factor (e) presumably based on evidence that appellant supervised at least three others in drug sales and that he procured drugs in Chicago. But this is the only evidence in the record to support this conclusion. The district court noted that "the defendant was if not the leader or the mastermind, at least the major partner." There is no evidence regarding appellant's proximity to a source for the drugs however, and it is possible he made several small purchases of drugs in Chicago and simply processed and repackaged them for sale in Rochester.[10] Something more than the procurement of drugs in Chicago and the supervision of three people must be shown in order to satisfy the "high position" factor (e) standard, however. Any conclusion as to appellant's relative rank in the distribution hierarchy based on this record would be speculation and would fall short of our requirement of substantial and compelling circumstances to justify a departure. *See Rairdon,* 557 N.W.2d at 326.

We conclude that the record does not support findings as to the presence of factors (a) three or more separate transactions, (b) sale of quantities substantially larger than for personal use, (c) manufacture of controlled substances for use by other parties, or (e) high position in drug distribution hierarchy, and that the sen-

9. Whether a certain quantity of controlled substances is an amount substantially larger than for personal use may be a matter subject to expert opinion. *See, e.g., Collard,* 414 N.W.2d at 736.

10. *Compare* 21 U.S.C. § 848c(2)A (1994) (requiring supervision of five or more people to qualify as a drug kingpin under federal continuing criminal enterprise statute); *Garrett v. United States,* 471 U.S. 773, 781, 105 S.Ct.

2407, 85 L.Ed.2d 764 (1985) (describing continuing criminal enterprise statute as intended to reach the "top brass" in drug rings, not lieutenants and foot soldiers). *But see United States v. Becton,* 751 F.2d 250, 254–55 (8th Cir.1984) (holding one need not be the dominant organizer or manager of a drug enterprise to be found guilty of the continuing criminal enterprise offense).

tencing departure was therefore an abuse of the district court's discretion.

## II.

Appellant also argues that the major controlled substance offense factors are based upon considerations already taken into account by the legislature through its categorization of drug offenses by the quantity of drugs sold—thus, argues appellant, the sentencing guideline's aggravating factors amount to a double-counting of the quantity of drugs present in a particular offense. The aggravating factors for a major controlled substance offense were established in 1981, but at that time drug offenses were not based on the quantity of the substance in the charged offense. See Minn.Stat. § 152.09 (1980); State v. Walters, 315 N.W.2d 590, 591 (Minn.1982).[11] In 1989 the legislature revised the drug sale and possession offenses to focus primarily on the quantity of drugs possessed or sold but the aggravating factors for sentencing, also based on quantity, remained unchanged.[12] See Act of June 1, 1989, ch. 290, art. 3, §§ 8–12, 1989 Minn.

Laws 1580, 1596–1601, codified at Minn. Stat §§ 152.021–.025.

While we need not reach this issue because, as noted above, the record does not support the sentencing departure, we are concerned that one or more of the departure factors at issue in this case may be duplicative of elements of the offense. For example, factor (b) sale of quantities substantially larger than for personal use, is arguably duplicative of the quantity element of the first- and second-degree drug offenses in Minn.Stat. §§ 152.021, 152.022.[13] Factor (c) relating to manufacture of controlled substances for use by others, and factor (e) applicable if defendant occupied a high position in the drug distribution hierarchy, could also implicate the quantity of drugs involved in an offense. If so, the elements that establish the offense might also be used to justify an upward departure violating our ruling in State v. Peterson, 329 N.W.2d 58 (Minn. 1983). In that case we held that when aggravating factors used by the district court to support a sentencing departure "were considered by the legislature in de-

---

11. Minnesota Statutes § 152.09, subd. 1(1) (1980) provided in pertinent part, "it shall be unlawful for any person * * * to manufacture, sell, give away, barter, deliver, exchange or distribute; or possess with intent to manufacture, sell, give away, barter, deliver, exchange or distribute, a controlled substance," and makes no reference to the quantity of drugs involved in a particular offense.

12. In State v. Soto we noted the evolution of Minnesota's drug laws:

In 1989, the legislature restructured the controlled substance statutes so that weight-based classifications applied to all drug offenses. Consequently, offenders selling greater quantities were classified under a more severe level than those selling lesser amounts.
Furthermore, the testimony of a witness during legislative hearings suggests that the weight-based classifications were consistent

with the amount that various levels of dealers would possess. Thus, the weight-based cutoff for third-degree sales was consistent with the amount that a street dealer would sell, whereas the weight-based cutoff for first-degree sales was consistent with what a wholesale dealer would sell.
State v. Soto, 562 N.W.2d 299, 303 n. 7 (Minn. 1997) (internal citations omitted).

13. Minnesota Statutes § 152.021, subd. 1(1) (1998) provides in pertinent part: "A person is guilty of controlled substance crime in the first degree if * * * the person unlawfully sells one or more mixtures of a total weight of ten grams or more containing cocaine * * *." Minnesota Statutes § 152.022, subd. 1(1) (1998) provides in pertinent part: "A person is guilty of controlled substance crime in the second degree if * * * the person unlawfully sells one or more mixtures of a total weight of three grams or more containing cocaine * * *."

termining the severity of the offense" and formed the basis for the conviction of the particular degree of offense, departure based on those aggravating factors is not proper. *Id.* at 60.

██ Therefore, we take this opportunity to caution courts against using quantity to support a departure under the major controlled substance offense departure criteria when to do so duplicates an element of the offense.

In summary, based on the record we hold that the substantial and compelling circumstances required to support a sentencing departure were not present in the December 7 offense and thus the depar-

ture from the presumptive guidelines sentence of 98 months to 122 months was an abuse of the district court's discretion. We remand to the district court with instructions to vacate the sentencing departure and impose the presumptive guideline sentence.[14]

Reversed and remanded.[15]

**14.** On remand the district court should also recalculate appellant's criminal history score as the court of appeals directed.

**15.** Given our disposition we do not reach appellant's claim that his sentence is disproportionate to the offense.