*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0340**

State of Minnesota,
Appellant,

vs.

David Edward Westgard,
Respondent.

**Filed September 8, 2014
Reversed and remanded
Halbrooks, Judge**

Dakota County District Court
File No. 19HA-CR-12-4014

Lori Swanson, Attorney General, St. Paul, Minnesota; and

James C. Backstrom, Dakota County Attorney, Heather Pipenhagen, Assistant County Attorney, Hastings, Minnesota (for appellant)

Cathryn Middlebrook, Chief Appellate Public Defender, Veronica Surges Shacka, Assistant Public Defender, St. Paul, Minnesota (for respondent)

Considered and decided by Halbrooks, Presiding Judge; Ross, Judge; and Chutich, Judge.

## UNPUBLISHED OPINION

**HALBROOKS**, Judge

In this appeal, the state challenges the district court's sentencing decision to grant respondent a downward durational departure. Because three of the district court's four

reasons for departing do not justify imposing a shorter sentence and because the fourth reason is not supported by the record, we reverse and remand.

## FACTS

In December 2011, the American Postal Workers Local 65 noticed some "irregularities" in its finances. The union investigated the matter and discovered that during the previous five months, its treasurer, respondent David Westgard, had embezzled $22,719 via unauthorized transactions with the union's credit card and unauthorized transfers of money from the union's bank account. Westgard admitted taking the money to support his gambling habit and pleaded guilty to theft in violation of Minn. Stat. § 609.52, subds. 2(a)(5)(i), 3(2), 3(5) (2010). Based on the severity level of Westgard's offense and his criminal history, the sentencing guidelines provided a presumptive stayed sentence of one year and one day. Community corrections recommended that Westgard be granted a stay of imposition of sentence and placed on probation for seven years.

Union president Todd Elkerton filed a victim-impact statement with the district court. Elkerton stated that Westgard had violated the members' trust in the union and jeopardized the union's credibility. He stated that Westgard ultimately paid back all the money he stole, but added that on three separate occasions Westgard presented a sum of money that Westgard falsely characterized as full reimbursement only to have additional embezzlement discovered later by the union. Elkerton also said that Westgard's actions required the union "to spend significant amounts of time and money to internally

2

investigate and seek legal consultation." As a result, the union requested $4,241.53 in restitution to cover its audit expenses and attorney fees.

Westgard moved the district court for a downward dispositional departure, arguing that he is amenable to probation and unlikely to reoffend. At the sentencing hearing, Westgard's attorney noted that Westgard confessed when confronted about the theft, assisted with the union's internal audit, and repaid all missing funds. The attorney also emphasized that Westgard is 47 years old and served as union treasurer for eight years, handling hundreds of thousands of dollars. The attorney said, "[Westgard] was overseeing a lot more money than the amount that he illegally used to gamble with," and later stated, "[Westgard] didn't take a bunch of money and take some trips and, you know, buy his girlfriend or whoever a fancy piece of jewelry, which we often see people commit these crimes just out of pure greed. He didn't do that. He took it to gamble with it." The attorney requested that the district court sentence Westgard's offense as a gross misdemeanor, not a felony, or, in the alternative, to impose a probation term shorter than the PSI recommendation.

The state supported the PSI's recommended probation term but opposed Westgard's request for a gross-misdemeanor disposition. The prosecutor noted that the guidelines sentence is probation and stated that "[n]obody is asking for [Westgard] to go to prison." She stated that by seeking a gross-misdemeanor disposition, Westgard was requesting a durational departure, not a dispositional departure as his motion indicated. She argued that there are no substantial and compelling reasons to support a durational departure in Westgard's case.

3

Westgard addressed the district court himself. He stated that his actions were wrong, that he feels terrible about what he did, and that he "deeply regret[s] and [is] shameful about that period of time." He said that he is in a better place now, that his life is progressing positively, and that he has "no doubt that this will not happen again."

The district court, after discussing Elkerton's statement, asked Westgard to convince him that he is remorseful and knew that he was committing a crime. Westgard responded that he feels bad every day about what he did and feels terrible for letting Elkerton down. He added, "I'm very ashamed. I didn't want people to show up because I'm shameful of what happened. I didn't want them to know because I'm ashamed." The district court stated, "Being ashamed or afraid of how others are perceiving you is different than being sorry for what took place. That's what I look at." Westgard responded, "I'm very sorry for what took place. I believe [Elkerton] knows that."

The district court then presented Westgard with two options, stating:

> I'm going to offer you Door A or Door B. Okay? Door A would be sentenced exactly per the PSI recommendations. Door B would be that I would give him a gross misdemeanor disposition, but that 20 days would become 20 days in custody. So he can have a gross mis[demeanor] disposition for 20 days in jail.
> Feeling ashamed isn't enough of a penalty for what you did here, not by any stretch of the imagination. This is big dollars. And [if] [the prosecutor] wanted to go appeal on what I'm doing, she would probably be successful at it. But you did one day and some community work service. That doesn't fly. And I'll give you the gross mis[demeanor] dispo[sition] if you go serve 20 days in jail. 21 days, credit one, and then you get a third off. You have work release, so you have your job as long as you have a license and can get back and forth.

4

After a brief recess, Westgard chose "Door B," the gross-misdemeanor disposition and jail time. The district court sentenced him to 365 days in the Dakota County Jail, staying 345 days and allowing him to serve the remaining 20 on work release if eligible. It also placed him on supervised probation for two years and required him to pay the requested restitution amount. The state appeals.

## D E C I S I O N

The sentencing guidelines provide for a sentence of one year and one day for Westgard's conviction based on the severity of his offense and his criminal history. This sentence is "presumed to be appropriate," and the district court is required to impose it unless there are "identifiable, substantial, and compelling circumstances" that support a different sentence. Minn. Sent. Guidelines 2.D.1 (2012); *see also State v. Spain*, 590 N.W.2d 85, 88 (Minn. 1999) (stating that the sentencing court has no discretion to depart "unless aggravating or mitigating factors are present").

The district court sentenced Westgard to 365 days, one day less than the presumptive duration, and correctly identified this sentence as a downward durational departure. *See State v. Bauerly*, 520 N.W.2d 760, 762 (Minn. App. 1994) (holding that pronouncing a year-long sentence for an offense that carried a presumptive sentence of a year and a day is a durational departure), *review denied* (Minn. Oct. 27, 1994). Although the court provided no reasons for the departure at the sentencing hearing, it marked four in its departure report: "Crime less onerous than usual," "Amenable to probation," "Amenable to treatment," and "Impose restitution/ensure financial penalties paid."

5

When the district court states its reasons for a departure, we must "examine the record to determine if the reasons given justify the departure." *State v. McIntosh*, 641 N.W.2d 3, 8 (Minn. 2002). Whether a stated reason for departure is "proper" is a legal question. *Dillon v. State*, 781 N.W.2d 588, 595 (Minn. App. 2010), *review denied* (Minn. July 20, 2010). "Once we determine as a matter of law that the district court has identified proper grounds justifying a challenged departure, we review its decision *whether* to depart for an abuse of discretion." *Id.*

Three of the district court's reasons for making a durational departure are improper because they concern Westgard as an offender as opposed to his offense. *See State v. Peter*, 825 N.W.2d 126, 130 (Minn. App. 2012), *review denied* (Minn. Feb. 27, 2013) ("Caselaw is settled that offender-related factors do not support durational departures."). Instead, amenability to probation and treatment are factors related to the individual that may support a dispositional departure. *State v. Herrmann*, 479 N.W.2d 724, 728 (Minn. App. 1992), *review denied* (Minn. Mar. 19, 1992). Likewise, ensuring payment of restitution can justify a dispositional, but not a durational, departure. *State v. Dillener*, 336 N.W.2d 268, 269 (Minn. 1983).

The only potentially appropriate factor for a downward durational departure indicated by the district court is the severity of the offense. *See State v. Cox*, 343 N.W.2d 641, 643 (Minn. 1984) ("The general issue that faces a sentencing court in deciding whether to depart durationally is whether the defendant's conduct was significantly more or less serious than that typically involved in the commission of the crime in question."). But while the district court marked that Westgard's crime was "less onerous than usual,"

6

it made no record explaining why. In fact, a statement from the sentencing hearing suggests that the district court felt the opposite. The district court said to Westgard, "Feeling ashamed isn't enough of a penalty for what you did here, not by any stretch of the imagination. This is big dollars." And Westgard acknowledges in his brief that the district court "made it very clear [that his] offense was serious." Without any explanation as to why Westgard's offense is less serious than other similar offenses, this basis is inadequate to justify the departure.

When the district court gives improper or inadequate reasons for a departure, we must determine whether there is sufficient evidence in the record to justify the departure. *McIntosh*, 641 N.W.2d at 8. Westgard argues that his "remorse and reparation" justifies his durational departure. Specifically, he emphasizes that he (1) "displayed open and genuine remorse throughout the entire process, including resigning his position with the Union before he was charged . . . and seeking out gambling treatment before being sentenced," (2) "only stole money because he had a gambling addiction," and (3) "had already made the victim whole by paying restitution to the Union *before* he was caught and charged."

As we have previously stated, whether a defendant's remorse is an appropriate factor when considering a departure "has received somewhat conflicting treatment in the caselaw." *Dillon*, 781 N.W.2d at 599 (addressing lack of remorse as a basis for an upward departure). "Remorse, or lack of remorse, generally bears on the defendant's amenability to probation, and is relevant to a dispositional departure." *Bauerly*, 520 N.W.2d at 762. "However, there may be cases in which the defendant's lack of remorse

7

could relate back and be considered as evidence bearing on a determination of the cruelty or seriousness of the conduct on which the conviction was based." *State v. McGee*, 347 N.W.2d 802, 806 n.1 (Minn. 1984).

The majority of cases considering remorsefulness as a basis for departing durationally have involved a lack of remorse—justifying a longer sentence. *See, e.g.*, *State v. Folkers*, 581 N.W.2d 321, 327 (Minn. 1998) (holding that defendant's "entire lack of remorse" was a sufficient reason to grant upward durational departure); *State v. VanZee*, 547 N.W.2d 387, 392-93 (Minn. App. 1996) (holding that "overwhelming evidence" of defendant's lack of remorse "was properly considered as an aggravating factor justifying an upward durational departure"), *review denied* (Minn. July 10, 1996). While Westgard relies on *Bauerly* to argue that his remorse justifies a shorter sentence, that case is distinguishable.

In *Bauerly*, we did not hold that the defendant's remorse alone supported his downward durational departure. *See* 520 N.W.2d at 763. We instead ruled that the district court did not err by considering remorse and that the departure was also supported by the "significantly lower amount of property involved." *Id.* That is not the case here. First, the district court made no finding that Westgard is remorseful. It could have selected "Shows remorse/accepts responsibility" as a reason for departing on the departure report, but it did not. Further, the amount Westgard stole—$22,719—is significantly more than that required for felony theft, and his conduct could have justified an upward departure under Minn. Sent. Guidelines 2.D.3.b. As the union treasurer, Westgard had a fiduciary relationship with the union and its members. He emphasizes

8

that he "made the victim whole" by repaying the funds he stole, but he was not forthcoming about the total amount of his theft. He waited for it to be uncovered by the union. And the repercussions from Westgard's theft cost the union more than $4,000 beyond the misappropriated funds, not to mention the non-financial harm concerning members' trust and the union's reputation. All these factors demonstrate that Westgard's offense was not less serious than an ordinary theft.

Because there are no substantial and compelling reasons to justify a downward durational departure in Westgard's case, we reverse and remand to the district court for imposition of the presumptive felony sentence of one year and one day. *See McIntosh*, 641 N.W.2d at 8 ("If the reasons given are improper or inadequate and there is insufficient evidence of record to justify the departure, the departure will be reversed.").

The state also argues that the district court, by allowing Westgard to choose between two sentences, abused its discretion, violated separation of powers, and undermined the sentencing guidelines' purpose of uniformity. Because we reverse and remand based on the lack of justification for Westgard's sentence, we do not decide this issue. But we note our concern that the district court, which has "broad discretion to determine the appropriate sentence," *State v. Aleshire*, 451 N.W.2d 66, 67 (Minn. App. 1990), *review denied* (Minn. Apr. 13, 1990), abandoned its sentencing role by essentially transferring its discretion to Westgard and allowing him to choose his own sentence. *See State v. Olson*, 325 N.W.2d 13, 18 (Minn. 1982) (stating that imposing a sentence within legislative limits is "purely a judicial function"). In doing so, the district court failed to exercise its discretion, which further supports remanding this case. *See State v. Mendoza*,

638 N.W.2d 480, 484 (Minn. App. 2002) (remanding case in which "an exercise of discretion may not have occurred"), *review denied* (Minn. Apr. 16, 2002).

**Reversed and remanded.**