STATE OF MINNESOTA

IN SUPREME COURT

A13-1313

Court of Appeals                                                        Gildea, C.J.
                                                                 Took no part, Dietzen, J.

State of Minnesota,

          Respondent,

vs.                                                                  Filed:  September 30, 2015
                                                                     Office of Appellate Courts

Robert John Meyers,

          Appellant.

_____

Lori Swanson, Attorney General, Saint Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Elizabeth R. Johnston, Assistant Hennepin County Attorney, Minneapolis, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Jessica Merz Godes, Assistant State Public Defender, Saint Paul, Minnesota, for appellant.

_____

S Y L L A B U S

1.      Because the repeat offender aggravating factor in Minn. Stat. § 244.10, subd. 5a(a)(3) (2014), requires proof of facts that the Legislature did not consider in setting the sentence for the offense of conviction, a departure based on this factor does

1

not run afoul of the principle applied in *State v. Peterson*, 329 N.W.2d 58 (Minn. 1983) or *State v. Erickson*, 313 N.W.2d 16 (Minn. 1981).

2. Because appellant's sentence, which does not unduly exaggerate the criminality of his behavior, was based on the repeat offender aggravating factor and facts found by the jury, the district court did not abuse its discretion in imposing a 240-month sentence.

Affirmed.

O P I N I O N

GILDEA, Chief Justice.

The question presented in this appeal is whether the district court erred when it sentenced appellant to an upward departure from the presumptive sentence for his first-degree assault conviction. Because we conclude that the court did not err in imposing a 240-month sentence, we affirm.

This case arises from an assault that occurred as the victim, A.C., attempted to enter her car. A.C.'s car was parked in a Minneapolis parking ramp. Physical evidence, video surveillance, and witness testimony linked Meyers to the assault. Specifically, the State presented evidence that on the afternoon in question, when A.C. started to enter her car, Meyers came up behind her and put a large hunting-type knife to her throat. A.C. attempted to grab the knife, screamed, and stomped on Meyers's foot. Meyers whispered in A.C.'s ear, "We're going for a ride." After A.C. bit his hand, Meyers stabbed A.C. in the abdomen. A.C. repeatedly asked Meyers what he wanted and offered him her purse and car. Meyers responded, "you're lucky you're a fighter," and walked away.

A.C. called 911 and ran down four flights of stairs to obtain help from the parking attendant. The parking attendant called emergency services and A.C. was taken by ambulance to the hospital.

An emergency room physician who treated A.C. testified that when A.C. arrived at the hospital, she was in critical condition and needed emergency surgery. By the time of surgery, A.C. had lost 2 liters of blood, or approximately 40% of her total blood volume. The stab wound to her abdomen was about 10 inches deep and had sliced through the left side of her liver and pierced her adrenal gland. A.C. also had lacerations on her chin and hand and had permanent nerve damage in her thumb from where she grabbed the knife. She spent 6 days in the hospital.

The State charged Meyers with first-degree assault, Minn. Stat. § 609.221, subd. 1 (2014); attempted kidnapping, Minn. Stat. § 609.25, subds. 1(2), 2(2) (2014); and attempted first-degree criminal sexual conduct, Minn. Stat. § 609.342, subd. 1(d) (2014). Before trial, the State provided notice of its intent to seek an upward sentencing departure on the first-degree assault charge pursuant to Minn. Sent. Guidelines II.D.2.b(3) (2010); *see also* Minn. Stat. § 244.10, subd. 5a(a)(3) (2014) (codifying aggravating factor). The aggravating factor on which the State relied, which we refer to as the "repeat offender aggravating factor," permits upward departure when "[t]he current conviction is for a Criminal Sexual Conduct offense or an offense in which the victim was otherwise injured and there is a prior felony conviction for a Criminal Sexual Conduct offense or an offense in which the victim was otherwise injured." Minn. Sent. Guideline II.D.2.b(3); *see also* Minn. Stat. § 244.10, subd. 5a(a)(3).

3

The jury found Meyers guilty of first-degree assault, acquitted him of the criminal sexual conduct charge, and failed to reach a verdict on the kidnapping charge. After the verdicts were returned, the jury was asked to determine whether certain facts existed to support a sentencing departure under the repeat offender aggravating factor. Specifically, the jury was asked to determine (1) "whether or not, in the course of the commission of the assault, the defendant intentionally injured [A.C.]"; and (2) "whether or not at the time of the commission of the [assault], defendant had a previous conviction for criminal sexual conduct to wit: Sexual abuse in the third degree in the Iowa District Court in and for the County of Washington on June 17, 2002." The State provided a certified copy of conviction for the 2002 criminal sexual conduct offense, and Meyers stipulated to the fact of conviction. The jury found that both facts had been proven.

At the sentencing hearing, the State argued that the district court should depart upward from the presumptive sentence range of 135-189 months, for the first-degree assault conviction. *See* Minn. Sent. Guidelines IV, subd. A (sentencing guidelines grid). The State contended that the departure was authorized under the repeat offender aggravating factor. Meyers argued that an upward departure was improper because the repeat offender aggravating factor duplicated the injury-to-the-victim element of first-degree assault, Minn. Stat. § 609.221, subd. 1. The district court rejected Meyers's argument and sentenced Meyers to the statutory maximum sentence of 240 months, Minn. Stat. § 609.221, subd. 1, an upward durational departure from the presumptive range for the offense.

4

The district court concluded that an upward durational departure was warranted "based upon the jury's finding that in the course of the commission of this offense [Meyers] intentionally injured [A.C.] and that at the time of the commission of this offense, [Meyers] did have a previous conviction of criminal sexual conduct." The court determined that the length of the departure was "based upon . . . the particular cruelty that [Meyers] demonstrated toward this victim, the gratuitous nature of [the] physical assault, the extensive nature of her injuries which suggests to the court that [Meyers's] conduct was at the outer limits of first degree assault, falling very short of murder." In the departure report, the court specified two reasons for departure: (1) the "[v]ictim was treated with particular cruelty," and (2) the "[c]urrent conviction is [an] offense w[ith] victim injury (including Crim. Sex Conduct) and there is a similar prior."

Meyers challenged his sentence on appeal. The court of appeals affirmed the district court, concluding that the repeat offender aggravating factor provided a valid ground for departure and that the district court did not abuse its discretion by imposing a 240-month sentence. *State v. Meyers*, 853 N.W.2d 819, 826 (Minn. App. 2014). We granted Meyers's petition for review.

Meyers raises two issues on appeal. First, he argues that the repeat offender aggravating factor cannot be applied to his conviction because that factor duplicates an element of his first-degree assault conviction. Second, he argues that even if the repeat offender aggravating factor could apply to his first-degree assault conviction, the district court abused its discretion in imposing a 240-month sentence. We address each argument in turn.

5

## I.

We first consider Meyers's argument that the repeat offender aggravating factor cannot be applied to his first-degree assault conviction because its application would duplicate an element of his conviction in contravention of the general sentencing principles articulated in our cases. Meyers notes that in order for the jury to have found him guilty of first-degree assault under Minn. Stat. § 609.221, subd. 1, the jury had to find that he "inflict[ed] great bodily harm" on the victim. "Great bodily harm" means "bodily injury which creates a high probability of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily harm." Minn. Stat. § 609.02, subd. 8 (2014). Meyers further notes that the repeat offender aggravating factor requires that the victim suffer injury. Minn. Sent. Guidelines II.D.2.b(3); *see also* Minn. Stat. § 244.10, subd. 5a(a)(3) (codifying aggravating factor). Relying on our case law, including *State v. Peterson*, 329 N.W.2d 58, 60 (Minn. 1983), Meyers argues that the repeat offender aggravating factor cannot be applied because it duplicates the injury element of his first-degree assault conviction.

For its part, the State argues that it is the Legislature's function to set sentences for criminal behavior and that the Legislature did so when it codified the repeat offender aggravating factor. *See* Minn. Stat. § 244.10, subd. 5a(a)(3). The State contends that the repeat offender aggravating factor can be used as a basis to depart from the Guidelines even if application of the factor duplicates the injury element of Meyers's first-degree assault conviction.

It is well-settled that the Legislature is vested with "[t]he power to define the conduct which constitutes a criminal offense and to fix the punishment for such conduct." *State v. Olson*, 325 N.W.2d 13, 17-18 (Minn. 1982). The Legislature has determined that recidivism can justify increased punishment. *See* Minn. Stat. § 244.10, subd. 5a(a)(3) (codifying factors that can support upward departure). The statutory language is clear that aggravated sentences are permissible and that one of the factors upon which a district court may depart is where "the current conviction is for . . . an offense in which the victim was otherwise injured and there is a prior felony conviction for a criminal sexual conduct offense . . . ." *Id.* Notably, the repeat offender aggravating factor does not exclude cases in which victim injury is an element of the crime or cases in which the offender's prior offense is already used to calculate his or her criminal history score. *See id.*[1]

But as Meyers correctly points out, we have held that facts considered by the Legislature in determining the severity of the offense being sentenced cannot serve as a basis for departure. *State v. Peterson*, 329 N.W.2d 58, 60 (Minn. 1983); *see also State v. Blanche*, 696 N.W.2d 351, 378-79 (Minn. 2005) (stating that certain facts cannot be used to support a departure, including facts necessary to prove elements of the offense for which a sentence is imposed). We have also stated that using a prior conviction to

---

[1] The Legislature has adopted other sentencing provisions that, like the repeat offender aggravating factor, authorize upward durational departures when the current offense involves specified criminal conduct and the defendant has a certain number and type of prior convictions. *E.g.*, Minn. Stat. § 609.1095, subds. 2-3 (2014) (dangerous offenders who commit a third violent crime or felony); Minn. Stat. § 609.3455, subds. 2, 3a, 4 (2014) (dangerous and repeat sex offenders).

7

calculate a defendant's criminal history score, and then using that same conviction as a ground for departure would "in effect, count[] a single conviction twice and that is contrary to the spirit and intent of the Guidelines." *State v. Erickson*, 313 N.W.2d 16, 18 (Minn. 1981). *But see Vickla v. State*, 793 N.W.2d 265, 272 (Minn. 2011) (affirming an aggravated sentence imposed pursuant to Minn. Stat. § 609.1095, even though the sentence enhancement double-counted the defendant's prior convictions); *Neal v. State*, 658 N.W.2d 536, 545-46 (Minn. 2003) (same).

The State acknowledges this precedent but notes that, as specifically relevant here, we have addressed and upheld upward departures based on the repeat offender aggravating factor. In *State v. Lindsey*, we determined that an upward durational departure was justified under the repeat offender aggravating factor because the defendant's current conviction for armed robbery involved victim injury, and he had a prior conviction for manslaughter—by definition, an offense in which the victim was injured. 314 N.W.2d 823, 825 (Minn. 1982).

In *State v. Peake*, we considered the validity of the repeat offender aggravating factor as a basis for an upward departure.[2] 366 N.W.2d 299 (Minn. 1985). Peake pleaded guilty to murder in the second degree and the district court sentenced him to 180 months in prison, an upward departure of 9 months. *Id.* at 300. The district court

---

[2]    At the time we decided *Peake*, the relevant provision of the Guidelines read: "The current conviction is for an offense in which the victim was injured and there is a prior felony conviction for an offense in which the victim was injured." Minn. Sent. Guidelines II.D.2.b(3) (1985). In 1989, this factor was amended to its current form, permitting the current and/or prior conviction to be for criminal sexual conduct, as well.

justified the durational departure because (1) "[t]he current conviction was for an offense in which the victim was injured and died"; and (2) "[Peake] had been previously convicted for an offense [manslaughter] in which the victim was injured and died." *Id.* Peake challenged the departure, arguing that the application of the repeat offender aggravating factor resulted in impermissible double-counting of an element of the offense of conviction. *Id.* at 301. Peake also argued that use of his prior conviction to support a departure constituted double penalization because his prior conviction was used to calculate his criminal history score. *Id.* We rejected Peake's argument, holding that when "past crimes are violent and the present crime a continuation of the violence, departure is permissible under the guidelines." *Id.* We noted that we had previously upheld the application of the repeat offender aggravating factor to a defendant convicted of aggravated robbery who also had a prior manslaughter conviction. *Id.* (citing *Lindsey*, 314 N.W.2d at 825).

*Lindsey* and *Peake* support the conclusion that the district court did not err in basing the departure in this case on the repeat offender aggravating factor. Meyers argues, however, that cases decided before and after *Lindsey* and *Peake* undermine the reasoning of those two cases. We disagree.

Meyers first argues that *Peake* is irreconcilable with *State v. Peterson*, in which we articulated the principle that a departure generally cannot be based on a fact that was considered by the Legislature in determining the severity of the offense of conviction. 329 N.W.2d 58, 60 (Minn. 1983). *Peterson* was a criminal sexual conduct case and the departure was based on the age and vulnerability of the victims, factors that we said

9

"were considered by the legislature in determining the severity of the offense and were apparently the basis for convicting him of criminal sexual conduct in the first and second degrees." *Id.* at 60.

Meyers also argues our more recent decisions in *State v. McIntosh*, 641 N.W.2d 3 (Minn. 2002), and *State v. Thompson*, 720 N.W.2d 820 (Minn. 2006), impliedly overrule *Peake* and *Lindsey*. In *State v. McIntosh*, we considered whether the district court improperly applied a different aggravating factor for major controlled substance offenses. 641 N.W.2d at 8 (referring to the major-controlled-substance-offense aggravating factor in Minn. Sent. Guidelines II.D.2b(5)). *McIntosh* involved a defendant who was convicted of multiple controlled-substance offenses, including second-degree sale of a controlled substance, defined as involving 3 grams or more of cocaine. *Id.* at 6, 11 n.13. The district court departed upward from the presumptive sentence for the second-degree sale conviction based on Minn. Sent. Guidelines II.D.2.b(5). 641 N.W.2d at 7. The court cited multiple sub-factors to support the existence of this aggravating factor, including that the drug sale involved "quantities substantially larger than for personal use." *Id.* (citing to Minn. Sent. Guidelines II.D.2.b(5)(b)). The defendant argued that application of the major-controlled-substance-offense aggravating factor was invalid because it was "*based upon considerations already taken into account by the legislature through its categorization of drug offenses by the quantity of drugs sold*," therefore "amount[ing] to a double-counting" of an element that establishes the seriousness of the offense. *Id.* at 11 (emphasis added). Although we did not need to reach this specific issue because there was insufficient support in the record for application of the major-controlled-substance-

10

offense aggravating factor, we "caution[e]d . . . against using quantity to support a departure under the major controlled substance offense departure criteria when to do so duplicates an element of the offense." *Id.* at 12.

In *State v. Thompson*, we considered whether the district court validly applied the aggravating factor for major economic offenses. 720 N.W.2d at 828 (discussing Minn. Sent. Guidelines II.D.2(b)(4)). In *Thompson*, the defendant was convicted of nine counts of theft by swindle over $35,000. *Id.* at 823. The court imposed a sentence that constituted a double durational upward departure from the presumptive sentence based on the court's determination that Thompson's crime was a "major economic offense." *Id.* at 825. The court relied on four of the major economic offense sub-factors listed in the Guidelines, including that the offense involved monetary loss that was substantially greater than the minimum loss specified in the statute. *Id.* at 829. We concluded that it was an abuse of discretion for the district court to rely on this sub-factor because doing so "amounted to using a factor necessarily used in convicting Thompson on each count" to support an upward departure, and that this "sort of double-counting [was] impermissible." *Id.* at 830. But we upheld the district court's reliance on two other sub-factors: that "the offenses involved a high degree of sophistication and planning and that [Thompson] used a position of trust . . . to facilitate her offenses." *Id.*

The relevant portion of our decision in *McIntosh* related to an upward departure that was based on the quantity of drugs involved in the offense of conviction. *See* 641 N.W.2d at 11-12 (addressing application of Minn. Sent. Guidelines II.D.2.b(5)(b)). Similarly, the portion of *Thompson* upon which Meyers relies related to the application of

11

an aggravating factor based on the amount of money involved in the offense of conviction. *See* 720 N.W.2d at 829-30 (addressing the application of Minn. Sent. Guidelines II.D.2.b(4)(b)). The aggravating factors at issue in these cases focused on facts that were considered by the Legislature when it determined the severity of the offense being sentenced, akin to the factors at issue in *Peterson*, 329 N.W.2d at 60 (considering the vulnerability of the victim, due in part to the victim's age). In addition to being facts necessary to support the aggravating factor, those same facts were also needed to prove the elements of the offenses of conviction. In these cases, we cautioned that the same set of facts cannot be used twice, once to support a conviction and a second time to support a departure.[3]

In contrast to the focus of the departures in the cases Meyers cites, the repeat offender aggravating factor includes facts other than those needed to prove the offense of conviction. Meyers is correct that the offense of conviction and the aggravating factor both require proof that the victim was injured. But the repeat offender aggravating factor requires more. Specifically, it requires the defendant to have a prior conviction of a particular type of offense: one involving victim injury or criminal sexual conduct. *See Peake*, 366 N.W.2d at 301 (noting that the repeat offender factor examines whether the

---

[3]     We followed a similar approach in *State v. Stanke*, 764 N.W.2d 824, 828 (Minn. 2009) (concluding that an "officer's particular vulnerability" could not support departure in sentencing for conviction of fleeing a peace officer resulting in death, Minn. Stat. § 609.487, subd. 4(a) (2008) because "the legislature accounted for a peace officer's particular vulnerability when it enacted Minn. Stat. § 609.487 with more severe penalties"), and *State v. Thao*, 649 N.W.2d 414, 424 (Minn. 2002) (reversing a departure when the district court based the departure "on the statutory predicates of the crime to support the sentence departure").

12

offense for which sentence is being imposed represents a "continuation of the violence" begun in a prior offense). The Legislature did not consider this type of repeated criminal behavior in setting the punishment for the offense of conviction, first-degree assault. The prior conviction is not an element of first-degree assault and it does not involve facts that are used to prove the element of first-degree assault. Because the repeat offender aggravating factor requires facts that are not needed to prove the offense of conviction—a prior conviction for a specified offense—a departure based on the factor does not run afoul of the rule in *Peterson*, 329 N.W.2d at 60.[4]

A departure based on the repeat offender aggravating factor likewise does not run afoul of the principle we applied in *Erickson*, 313 N.W.2d at 18, and *Neal*, 658 N.W.2d at 545-46. The aggravating factor is focused not on all prior convictions, but on only specific types of prior convictions—those involving victim injury or criminal sexual conduct. The repeat offender aggravating factor's focus on recidivism of particular criminal behavior distinguishes *Erickson* and *Neal* and makes the analysis in those cases inapposite.

In sum, the Legislature, through the repeat offender aggravating factor, has expressly determined that recidivism for particular felonies is a valid basis for an upward sentencing departure. Minn. Stat. § 244.10, subd. 5a(a)(3). Application of the repeat offender aggravating factor when injury to the victim is an element of the current offense

---

[4] We have also said that departures "cannot be based on uncharged or dismissed offenses." *State v. Jones*, 745 N.W.2d 845, 849 (Minn. 2008). Meyers makes no argument that this principle is at issue here and so we do not consider it.

does not contravene the general sentencing principles articulated in our cases because the Legislature did not consider a recidivism-based fact in determining the severity of the sentence for Meyers's offense at conviction. In *Peake*, we recognized that the repeat offender aggravating factor may be properly applied even when victim injury is an element of the current or prior conviction, and even when the prior conviction has already been factored into the presumptive sentence through the defendant's criminal history score. 366 N.W.2d at 300. There is no basis in any of the cases relied upon by Meyers to limit our holding in *Peake*. We therefore hold that the district court did not err in relying on the repeat offender aggravating factor to support an upward departure in this case.

## II.

We turn next to Meyers's alternative argument that even if the repeat offender aggravating factor applies, the district court abused its discretion in imposing a 240-month sentence. Under Minn. Stat. § 244.11, subd. 2(b) (2014), we may review the sentence challenged on appeal "to determine whether the sentence is inconsistent with statutory requirements, unreasonable, inappropriate, excessive, unjustifiably disparate, or not warranted by the findings of fact . . . ." We review the district court's decision as to the length of departure for an abuse of discretion. *State v. Murphy*, 545 N.W.2d 909, 916-17 (Minn. 1996).

Meyers argues that the district court abused its discretion by imposing a 240-month sentence for three reasons: (1) imposing an upward departure exaggerates Meyers's criminality; (2) Meyers's conduct was not significantly more serious than in a typical first-degree assault case; and (3) the district court improperly relied on facts not

14

found by the jury to find a second aggravating factor, particular cruelty, and the State did not provide notice of its intent to rely on particular cruelty as an aggravating factor. We address each argument in turn.

First, Meyers argues that the length of the departure exaggerates the criminality of his conduct because it was based on his prior conviction, which is already factored into his criminal history score. We rejected the double-counting argument Meyers advances in *Peake*. *See* 366 N.W.2d at 301. Meyers also relies on *Neal v. State*, 658 N.W.2d 536 (Minn. 2003), to argue that the district court abused its discretion in imposing an upward departure based on the repeat offender aggravating factor because it "artificially exaggerates the criminality of Meyers's conduct." *Neal* does not support the conclusion that the district court abused its discretion.

*Neal* involved a quadruple upward durational departure. *See* 658 N.W.2d at 546. By contrast, Meyers's 240-month sentence is less than a double durational departure (from a range of 135-189 months to 240 months). This difference in the length of the departure is significant because our statements in *Neal* addressing the potential for exaggeration of a defendant's criminality under the dangerous-offender statute were expressed in the specific context of a more-than-double durational departure imposed in the absence of severe aggravating circumstances. *Id.* Indeed, in *Neal* we ultimately remanded for imposition of a sentence that would still constitute at least a double durational departure from the presumptive sentence for Neal's kidnapping offense. *See id.* at 549. In short, the concerns at issue in *Neal* regarding exaggerated criminality are

not present in this case, and *Neal* does not support the conclusion that the district court abused its discretion in imposing a 240-month sentence.

Second, Meyers argues that his conduct, stabbing A.C. once in the abdomen, is not significantly more serious than conduct typically involved in first-degree assault cases. Meyers supports his argument by comparing his conduct to the conduct in four first-degree assault cases. *State v. Johnson*, 322 N.W.2d 358, 359 (Minn. 1982); *Dillon v. State*, 781 N.W.2d 588, 592, 602 (Minn. App. 2010); *State v. Lindsey*, 654 N.W.2d 718, 726 (Minn. App. 2002); *State v. Currie*, 400 N.W.2d 361, 366 (Minn. App. 1987). Meyers's argument is without merit. While "an appellate court may consider, among other things, comparable sentences in departure cases to determine if a sentence is unjustifiably disparate . . . for a sentence to be comparable, the sentencing departure must be based upon the same or similar reasons." *Vickla v. State*, 793 N.W.2d 265, 270 (Minn. 2011). None of the cases cited by Meyers involve a departure based on the repeat offender aggravating factor or a similar recidivism-based aggravating factor.

In cases in which departures were based on the repeat offender aggravating factor, we have held that the existence of the repeat offender aggravating factor is sufficient, *by itself*, to justify up to a double durational departure. *See State v. Lomax*, 437 N.W.2d 409, 410 (Minn. 1989); *State v. O'Brien*, 369 N.W.2d 525, 527 (Minn. 1985); *State v. Williams*, 337 N.W.2d 689, 690 (Minn. 1983). Based on this precedent, there is no merit to Meyers's argument that his 240-month sentence, a sentence that is less than the double durational departures we upheld in these cases, unduly exaggerates the criminality of his

behavior or is "unreasonable, inappropriate, excessive, [or] unjustifiably disparate" under Minn. Stat. § 244.11, subd. 2(b).

Third, Meyers argues that the district court improperly relied on facts not found by the jury—notably the intentional and unprovoked nature of the attack—in finding he acted with particular cruelty. Meyers argues that not only did the jury make no factual findings that would support the district court's determination of particular cruelty, but that the State failed to give notice of its intent to rely on particular cruelty as an aggravating factor, as required by Minn. R. Crim. P. 7.03 and Minn. Stat. § 244.10, subd. 4 (2014).

The record supports Meyers's contention that at least some of the facts supporting the district court's determination of particular cruelty were not found by the jury. The only findings made by the jury, apart from the guilty verdict for first-degree assault, were that Meyers "intentionally injured" A.C. and that Meyers had a prior conviction for criminal sexual conduct. Moreover, the record indicates that the State did not give notice of its intent to rely on particular cruelty. Nonetheless, the district court indicated at sentencing and in the departure report that particular cruelty, along with the repeat offender aggravating factor, provided a basis for the length of the sentence in this case.

Any error in sentencing based on particular cruelty, however, does not require remand for resentencing. As we have held above, the district court had a valid basis to depart based on the repeat offender aggravating factor. Moreover, the court imposed a sentence that was less than double the presumptive sentence. We have generally deferred to the district court's judgment on the proper length of departures, provided that there is a

17

valid basis to depart and the sentence imposed is less than double the presumptive sentence. *Cf. State v. Thompson*, 720 N.W.2d 820, 831 n.4 (Minn. 2006) (explaining that "because the departure imposed is within the general permissible range," namely, less than double the presumptive sentence, remand for resentencing to determine "the appropriate weight to be given to the remaining departure factors and to determine the appropriate level of departure" is not required). Because there was a proper ground on which to depart (the repeat offender aggravating factor), and because we have previously determined that this factor can support a double durational departure, the fact that the district court in this case identified an improper departure ground (particular cruelty) as part of the basis for its decision as to the length of the sentence does not require a remand. *See State v. Vance*, 765 N.W.2d 390, 395-96 (Minn. 2009) (concluding that remand for resentencing was unnecessary because two out of three aggravating factors relied upon by the sentencing court were valid and one of those validly applied factors could itself support the double upward durational departure originally imposed by the sentencing court).

Given the facts of this case, the applicability of the repeat offender aggravating factor, and our prior recognition that the departure ground itself justifies up to a double durational departure, we hold that the court did not abuse its discretion by imposing a sentence of 240 months.

Affirmed.

DIETZEN, J. took no part in the consideration or decision of this case.

18